**McCAHILL v. HELVERING, Commissioner of Internal Revenue.**

No. 10052.

Circuit Court of Appeals, Eighth Circuit.

Jan. 22, 1935.

Guy Chase, of St. Paul, Minn. (Kellogg, Morgan, Chase, Carter & Headley, of St. Paul, Minn., on the brief), for petitioner.

L. W. Post, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

WOODROUGH, Circuit Judge.

On petition to review the decision of the Board of Tax Appeals (29 B. T. A. 1080) sustaining the disallowance by the Commissioner of deductions from the income of mine property in the years 1929 and 1930 claimed by the taxpayer on the ground of depletion.

The following material facts are contained in the findings of the Board of Tax Appeals:

Mary E. McCahill died testate on August 14, 1922. By her will substantially all of her property was devised and bequeathed to trustees for the benefit of her five surviving children, who were equal beneficiaries of the income of the trust so cre-

ated, and one of whom is the petitioner herein.

The executrix and administrator with the will annexed of the decedent's estate were also trustees of the trust at all times material hereto.

The Shenango mine, located in St. Louis county, Minn., constituted a part of the corpus of the trust. This mine was subject to a mining lease dated May 26, 1900, which provides for royalties to be paid by the lessee to the lessor at the rate of 20 cents per ton for the iron ore mined and removed from the leased premises and for certain annual minimum payments for which ore may thereafter be mined.

In the years 1929 and 1930 the trustees received from the lessee the respective sums of $111,480.58 and $87,052.03 as royalties on iron ore mined and shipped during those years. In their fiduciary returns they deducted from the respective gross incomes, therein reported, the amounts of $75,595.65 and $59,186.65 as depletion. Upon audit of the returns the Commissioner disallowed the depletion deductions so taken and increased the income for each year accordingly.

The Commissioner allowed depletion for the years 1922 to 1927 and for a part of 1928 at the rate of 13.598 cents per ton.

In the administrative proceedings upon Mary E. McCahill's estate in the probate court the property here involved was appraised at $206,662.24, which valuation was accepted by the state taxing authorities for the purpose of Minnesota inheritance taxes, and by the federal taxing authorities for the purposes of the federal estate tax. The executors in the federal estate tax return fully stated the then known facts upon which and the manner in which the valuation had been determined.

The appraisal was made on information obtained from the records and publications of the Minnesota State Tax Commission as especially set forth in a letter from the secretary of that commission showing that the ore reserve in the Shenango mine on May 1, 1922, was 1,669,751 tons. At the time the federal estate tax return was filed, neither the executrix nor the administrator had any knowledge as to the quantity of ore in the mine nor any specific or general idea as to the value of the mine, nor any reason to believe that there was any greater tonnage than the Minnesota commission had reported.

The federal estate tax return showed that from the estimate of 1,669,751 tons on May 1, 1922, there were deductible certain quantities shipped between May 1 and August 14, 1922, the date of the death of Mrs. McCahill. The value of her net interest in the royalties was appraised at 19.4 cents per ton. The estate tax return showed $206,662.24 as the net value of the decedent's interest in the mine at date of death.

Before 1929, the Commissioner allowed to the trustees depletion and depreciation deductions in the total amount of $206,662.-24. In the years 1928 to 1931, inclusive, ore was recovered and shipped from the mine and royalties received thereon, upon which the Commissioner allowed no depletion deduction.

Some time in 1932 a competent mining engineer, using only facts known in 1922, estimated that the ore reserve in the mine on August 14, 1922, was 4,723,109 tons. Upon the basis of such estimated tonnage and by the formula used in determining the value of $206,662.24 by the executors, he computed a fair market value of the mine as of August 14, 1922, of $597,451.22. Based on this estimate the total unrecovered reserve in January, 1929, was 2,942,-737 tons, and at the same time the unexhausted value based on the new computation was $348,817.27.

The engineer who made the revised estimate of tonnage in 1932 used the so-called "slump theory" in his computation. In 1922 this theory was known to only four or five mining engineers in the service of the United States Steel Corporation. It became generally known several years later. The Board was satisfied that the estimate so made was approximately correct and that at the basic date there were at least 4,723,-109 tons of recoverable ore in the mine.

The Commissioner refused to allow additional depletion deductions for the years 1929 and 1930 based upon the revised estimate made in 1932.

Upon review by the Board of Tax Appeals, the action of the Commissioner was sustained.

The applicable statutes and regulations are Revenue Act of 1928, c. 852, 45 Stat. 791, § 23 (*l*), depletion, (m) basis for depreciation and depletion; section 114 (b) (1); section 113 (a) (5), 26 USCA §§ 2023 (*l*, m), 2114 (b) (1), 2113 (a) (5); Treasury Regulations 74, art. 226 (a); art. 228; art. 229. The relevant substance of the statutes is that in the case of coal mines

the taxpayer shall be allowed as deductions from gross income "a reasonable allowance for depletion * * * according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations * * * of the Secretary." And it is provided that the basis for depletion in the case of a coal mine acquired by specific devise "shall be the fair market value of the property at the time of the death of the decedent."

The regulations for determining the then "fair market value" are elaborately evolved. They prescribe that:

"Such value must be determined, subject to approval or revision by the Commissioner, by the owner of the property in the light of the conditions and circumstances known at that date, regardless of later discoveries or developments in the property or subsequent improvements in methods of extraction and treatment of the mineral product. The value sought should be that established assuming a transfer between a willing seller and a willing buyer as of that particular date." Article 226.

And one of the factors in arriving at the value is the mineral content of the deposit, which is to be determined in accordance with article 229. It is there provided:

"Every taxpayer claiming a deduction for depletion of mines for a given year will be required to estimate or determine with respect to each separate property the total units (tons * * *) of mineral products reasonably known, or on good evidence believed, to have existed in the ground on the basic date, according to the method current in the industry and in the light of the most accurate and reliable information obtainable."

The Regulation (article 226) requires the Commissioner to:

"Give due weight and consideration to any and all factors and evidence having a bearing on the market value, such as * * * valuation for local or State taxation * * * and the amount at which the property may have been inventoried in the probate court."

The finding of the Board of Tax Appeals that the valuation of the Shenango mine was arrived at as of the date of the death of the testator in exact conformity with the regulations is fully sustained by the evidence and it is not disputed that depletion allowances deducted from gross income each year from 1922 to 1928, inclu-

sive, amounted to the full value put upon the property as the basis for depletion. But it is contended for the taxpayer under its assignments of error that because the figure of 1,519,751 tons of iron ore was taken to make up the valuation on the basic date, when in truth, as now found by the Board, there were 4,723,109 tons of recoverable ore at that time, the error entitled the taxpayer to have a revaluation and further depletion deductions for the years 1929 and 1930.

Articles 228 and 229 of the Regulations each contain provisions concerning the matter of errors in valuations. Article 228 treats generally of revaluation, and its provisions, so far as pertinent, are that:

"No revaluation of a property whose value as of the basic date has been determined and approved will be made or allowed during the continuance of the ownership under which the value was so determined and approved, except in the case of a subsequent discovery as defined in article 240, or of misrepresentation or fraud or gross error as to any facts determinable on the basic date."

As above noted, the mineral content of deposit shall be determined in accordance with article 229, and that article contains the provision:

"When information subsequently obtained clearly shows the estimate to have been materially erroneous it may be revised with the approval of the Commissioner."

We think the facts in this case bring it squarely within the quoted provisions of article 229 in that the information which the taxpayer obtained from the expert in 1932 was "subsequently obtained and clearly shows the estimate to have been materially erroneous." The finding of the Board that there was no gross error as to facts determinable at the basic date, within the meaning of article 228, is supported by substantial evidence.

Where the right to have the estimate of mineral content of a mine revised arises under the provisions of article 229 because "information subsequently obtained clearly shows the estimate to have been materially erroneous," the information and new estimate based thereon cannot justify going back to preceding tax years and changing the depletion allowances lawfully arrived at for those years. In this case the taxpayer had caused the Shenango mine to be valued for basis of depletion at $206,662.-

24 upon "the best information obtainable" and had, on account of such valuation, deducted from gross income over a period of seven years some thousands of dollars more than would have been deductible if the valuation had been on the basis of the later information. But where revision is made on account of "information subsequently obtained," the government cannot go back into the prior years and recover the excessive deductions, and neither can the taxpayer go back to the years 1929 and 1930, before the error was known, and, by obtaining deductions for those years, upset the basis for depletion as it stood in those years.

In Kehota Mining Co. v. Lewellyn (C. C. A.) 28 F.(2d) 995, 996, affirmed (C. C. A.) 30 F.(2d) 817, the court considered the statute of 1918 and the regulations then in effect concerning revision for error shown by subsequent developments. In that case a taxpayer had obtained a revision of the estimate of coal content of its mine in 1922 and sought to go back and correct its depletion allowances on the basis of the revised estimate of recoverable coal. The court said:

"There is absolutely no authority for going back to the preceding tax years and changing the depletion allowances already deducted.

"The taxpayer is entitled to recover, by way of depletion, the cost of his property. A part of this cost has already been allowed to him in a computation based on the estimated quantity of mineral products in the property. On the making of a new or corrected estimate, thereafter the annual depletion allowance will be computed on the basis of the new estimate, and allowed to the taxpayer, until the entire cost of the property has been recovered by way of depletion allowances."

Although the wording of the revision clause was not the same as the clause in article 229 involved here, there can be no difference in the effect. Indeed, the taxpayer makes no claim that the Commissioner should go back to the basic date and correct all the depletion deductions to conform to a valuation revised on the basis of the information obtained in 1932. The deductions had been taken at the rate of 13.598 cents per ton and on the new information the rate would have been substantially less.

We find, therefore, that while the basic valuation stood unrevised in the years 1929 and 1930 with the total amount thereof already absorbed by depletion allowances deducted by the taxpayer, the taxpayer was not entitled to any additional deduction for depletion of the mine in those years, and that the Board of Tax Appeals rightly sustained the deficiencies found by the Commissioner. United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 71 L. Ed. 1054.

It appears to have been the opinion of the Board of Tax Appeals that the value of the Shenango mine as determined in 1922 was the total amount which the owners may exhaust by depletion allowances, notwithstanding the information subsequently obtained clearly showing that the estimate of mineral content of the mine was materially erroneous. We do not find it necessary to so decide.

We sustain the finding of the Board that there was no gross error as to the facts determinable on the basic date, and affirm the order involved. But we do not affirm or approve that part of the opinion of the Board indicating that the taxpayer has no right to have revision, correction of the value, and further deductions for depletion in other years. It is true that a purchaser of a mine at a certain price cannot withhold more than his capital investment on account of depletion, but where the property is acquired by inheritance or devise and the basic value for depletion allowances must be determined, the statute and the regulations do not contemplate that the taxpayer shall be without remedy in case of error.

Affirmed.