Harland F. Martini & Sylvia E. Martini v. Commissioner.
Martini v. Commissioner
Docket No. 5233-67.
United States Tax Court
T.C. Memo 1969-196; 1969 Tax Ct. Memo LEXIS 93; 28 T.C.M. (CCH) 1038; T.C.M. (RIA) 69196; September 29, 1969. Filed. Harland F. Martini, pro se, Sauk Rapids, Minn., Jay B. Kelly, for the respondebt. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1963 in the amount of $2,843.60. After concessions made by the parties, the issues left are (1) whether petitioners are entitled to a bad debt deduction pursuant to section 166, I.R.C. of 1954, [1] and (2) whether petitioners should be allowed to revalue their mineral property in 1963 under section 611 for purposes of depletion. *94 Findings of Fact Some of the facts have been stipulated and they are found accordingly. Harland F. and Sylvia E. Martini, husband and wife, had their legal residence in Sauk Rapids, Minnesota, at the time they filed their petition herein. They filed a joint income tax return for 1963 with the district director of internal revenue, St. Paul, Minnesota. The petitioners are on the cash receipts and disbursements method of 1039 accounting. Harland F. Martini will hereinafter be called the petitioner. During the years 1960 and 1961 the petitioner and Harlan Johnson, who was engaged in the gravel business, entered into a lease providing for the removal of sand and gravel from petitioner's land. He was to pay the petitioner twenty cents ($0.20) per cubic yard. Johnson removed approximately 73,994 cubic yards of sand and gravel during those years but failed to pay the petitioner the sum equal to the agreed price which was $14,798.80. The petitioner obtained a judgment against Johnson for the money owed for the gravel pursuant to the lease, plus accumulated interest, in the total amount of $16,056.56. The confession of judgment is dated November 12, 1962. Johnson voluntarily *95 filed bankruptcy on August 15, 1963. Petitioner on January 30, 1964, filed a formal proof of claim in the amount of $16,056.56 in the Johnson bankruptcy proceedings. As a result of the proof of claim, a partner of Johnson reached an agreement with the petitioner that Johnson's share of the partnership assets was worth $4,500. These assets, certain machinery, were kept by the partner, who agreed with the petitioner to pay him $100 per month until a total amount of $4,500 was paid. The amount of $700 thereof was received in 1963. Petitioner claimed a bad debt deduction on his 1963 return in the amount of $14,727.94 computed as follows: 73,994 cubic yards of gravel removed at 20" per yard
$14,798.80
Add: Interest plus costs 1,257.76
Total
$16,056.56
Less: To be received from Granite City Ready Mix 4,500.00
$11,556.56
Add: Depletion at.04286 on 73,994 cubic yards 3,171.38
Total deduction
$14,727.94
Respondent disallowed this deduction. Petitioner also deducted on his 1963 return the amount of $1,431.05 as and for a cost depletion allowance. Respondent disallowed the claimed deduction but allowed the amount of $368.89 for a percentage depletion deduction *96 in lieu of remaining cost depletion balance as of January 1, 1963, of $206.46. He, then, conceded that petitioner was entitled to deduct the additional sum of $679.46 for cost depletion in 1963. The farm property upon which the sand and gravel existed which gives rise to the bad debt deduction and the cost depletion deduction was conveyed to petitioner by warranty deed from his parents, with retained life states, dated December 21, 1930. Petitioner's father died in 1949 and his mother died on February 27, 1951. The farm property involved herein is located in Sherburne County, Minnesota. Farmland in this county sold for $36 per acre in 1930 and 1931. In 1951, the market value for Sherburne County farmland was $59 per acre. The Sherburne County Assessor showed a full and true value of $3,276 for the petitioner's farm for the years 1950 through 1952. In 1951, the petitioner's farm property contained 147.68 acres. The petitioner leased the gravel deposit on the farm to the Hallett Construction Company from March 26, 1949, to April 25, 1951, for a consideration, inter alia, of twenty cents ($0.20) per cubic yard for all materials used in the building of Highway 10. Hallett Construction *97 Company operated a gravel crushing and washing plant on the property and began removing gravel in 1951. The Hallett lease was extended for a period of two years, and the modified lease was again renewed pursuant to a notice for an additional period of 10 years from April 25, 1953. In 1952, the State of Minnesota needed gravel for maintenance purposes and the building of trunk highways and offered the petitioner ten cents ($0.10) per cubic yard. A dispute resulted between the State of Minnesota, Hallett Construction Company and the petitioner. The result was a condemnation suit by the State of Minnesota for 4.66 acres of the petitioner's property which contained sufficient gravel for the State to complete its road improvement projects in the area. The condemnation suit was settled, and, in 1953, the petitioner received the total amount of $7,611.98 in settlement thereof. The petitioner first claimed a deduction for depletion on his Federal income tax return filed for the year 1951. For 1951, a determination was made that the cost basis of the 30-acre gravel deposit was $6,000. Accordingly, said gravel deposit was estimated to contain 140,000 cubic yards of gravel, and, for purposes *98 of a depletion deduction, a depletion rate of.04286 per cubic yard was computed. A cost depletion allowance based on said rate 1040 was claimed as a deduction on the returns filed for the following years in the amounts shown: Year
Amount
1951
$ 592.90
1952
942.44
1953
* 932.00
1954
447.79
1955
0
1956
0
1957
139.38
1958
108.90
1959
583.15
1960
258.23
1961
0
1962 946.86
$4,951.65
In 1954, on behalf of the Minnesota State Reformatory at St. Cloud, Minnesota, a water exploration survey was conducted in the surrounding area. It was learned that there were extensive gravel deposits lying beneath the surface of a substantial portion of petitioner's farm. It was estimated that there were several times more gravel underneath the farmland than the original estimate of the gravel under the 30 acres made in 1951. The Northern States Power Company, in an attempt to obtain an easement on the petitioner's property, hired a real estate agent in St. Cloud, Minnesota, who appraised the remaining gravel on the *99 farmland at $2,000 per acre in 1961. Petitioner on his 1963 income tax return deducted $1,431.05 as a cost depletion deduction. Respondent, by concession, allowed $1,048.35 of the $1,431.05 taken as a cost depletion deduction, thereby disallowing $382.70 of the deduction as taken by petitioner. Opinion The two issues for decision are (1) whether petitioner is entitled to a bad debt deduction under section 166 for the nonpayment of royalties from his lessee for gravel he removed in 1960 and 1961 from petitioner's land, and (2) whether petitioner should be allowed to revalue his mineral property in 1963 in order to revise the basis of such property for purposes of depletion. Section 166 provides, in part, that "[there] shall be allowed as a deduction any debt which becomes worthless within the taxable year." The regulations under this section, however, clearly point out that "debts arising from unpaid wages, salaries, fees, rents, and similar items of taxable income shall not be allowed as a deduction under section 166 unless the income such items represent has been included in the return of income for the year for which the deduction as a bad debt is claimed or for a prior *100 taxable year." Sec. 1.166-1(e), Income Tax Regs. This general principle that ordinary income actually received cannot be reduced by a deduction for the loss of a gain not reflected in income has long been established. See Henry V. Poor, 11 B.T.A. 781 (1928), aff'd per curiam 30 F. 2d 1019 (C.A. 2, 1929), and John L. Seymour, 14 T.C. 1111 (1950). In this case the petitioner is a cash basis taxpayer who did not include or report as income in the year in issue or in any prior year the amount he deducted as a bad debt. The nonpayment of royalties not previously taken up as income does not provide the petitioner with a bad debt deduction. He has failed to establish a basis for the bad debt. See Maurice P. O'Meara, 8 T.C. 622 (1947), and Palmer Hutcheson, 17 T.C. 14 (1951). This brings us to the second issue. Petitioner argues that as a result of gross error the basis of his mineral property was incorrectly determined in 1951 for purposes of depletion and as such he should be allowed to revalue the property in order to increase the basis for purposes of depletion. We disagree. Petitioner contends *101 that the 1930 value of the property was used to determine the basis of the property when in fact it should have been the 1951 value. No evidence exists to support this statement. It seems to us after viewing all of the evidence as set forth in our findings of fact that the value of the property in 1951 was the value which was used by petitioner in his 1951 income tax return in determining the value of the land on which the gravel was located. Petitioner points out that in 1954 he learned for the first time the gravel deposit was much greater than he had estimated it to be in 1951 and that in 1953 he effected a settlement of a condemnation action with the State of Minnesota over 4.66 acres for $7,611.98. He states that this shows he made an error in his estimate of the value of the property. 1041 While it is true that knowledge as to conditions as they existed in 1951 subsequently changed, this does not provide the grounds for revaluing the property. Revaluation of the petitioner's gravel deposit because of events occurring after the date of the original estimate is specifically barred by the regulations except in certain cases which include gross error as to any facts known *102 on the date the valuation was made. Sec. 1.611-2(f), Income Tax Regs. The extent and size of the gravel deposit was not a known fact to the petitioners in 1951. The subsequently acquired knowledge of the extent of the deposit will not operate to label the estimate of value made in 1951 as gross error. Furthermore, the regulations specifically provide that reestimation of the mineral content of property will not affect the basis for depletion. Sec. 1.611-2(c)(2), Income Tax Regs.[2] Petitioner cannot, after he has exhausted his basis in 1963, simply claim gross error without adducing some evidence in support of his claim that is relevant to the conditions and circumstances as they existed in 1951. This he has not done. He has not shown that the valuation made in 1951 was grossly erroneous as to facts known at that time. *103 The case of McCahill v. Helvering, 75 F. 2d 725 (C.A. 8, 1935), affirming 29 B.T.A. 1080 (1934), is not unlike this one. There as here mineral property was valued as of a certain date for purposes of depletion, and, thereafter, the deposits in the property were found to be much greater than had been originally estimated. The Court held that the taxpayer was not entitled to additional deductions because additional values were determined to exist later since this did not constitute "gross error" as to facts determinable on the date the valuation was made. We hold petitioner is not entitled to a bad debt deduction for royalties which were never paid and have never been taken into income and that he is not entitled to a cost depletion deduction in excess of that which has been allowed. He cannot revalue his mineral property in order to increase his basis for purposes of cost depletion since he has failed to show gross error made at the time of valuation as to facts known at that time. Because of concessions made by both parties, Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, unless otherwise noted.↩
*. The amount of $932 is the amount shown as the cost basis of the 4.66 acres of land condemned by the State of Minnesota in 1953.↩
2. While petitioner is not entitled to additional cost depletion by virtue of the discovery of additional deposits of gravel, he is not entirely without a right to depletion deductions for future years. Respondent points out on brief: However, depletion deductions may be allowable after 1963 computed upon a percentage of gross income from the mineral property. See Treas. Regs., sec. 1.611-2(b)(2)↩.