STERLING COAL CO., LTD., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8048, 13358.   Promulgated October 7, 1927.

A taxpayer is not permitted to revise its depletion deduction for
previous years as the result of factors determined in subsequent
years. If subsequent developments show that a material error has
been made in the original estimates of ore reserves a new estimate
may be made and the capital remaining to be recovered distributed
accordingly.

*Sterling Newell, Esq.*, for the petitioner.
*A. G. Bouchard, Esq.*, for the respondent.

This is a proceeding for the redetermination of deficiencies in in-
come and profits taxes for the fiscal years ended March 31, 1917,
Docket No. 13358, and for the fiscal years ended March 31, 1918, and
1919, Docket No. 8048, in the amounts of $2,532.25, $5,546.58, and
$13,752.56, respectively. The two appeals were consolidated for the
purpose of hearing and decision. The only assignment of error in
each of the proceedings is that the Commissioner erred in determin-
ing the petitioner's depletion allowed on its Cecil Mine. No testi-
mony was introduced, all of the facts being either stipulated or ad-
mitted in the pleadings.

### FINDINGS OF FACT.

The petitioner is a corporation organized and existing under the
laws of the Dominion of Canada, with its principal office in Toronto.
Its principal office in the United States is at Cleveland, Ohio. The
petitioner acquired the Cecil property in 1910, consisting of a mine
opening and 1,179 acres of coal land in the Freeport seam in Taylor
County, West Virginia.

The fair market value on March 1, 1913, of the coal deposit and
development located in the Cecil Mine and owned by the Sterling
Coal Co., Ltd., on March 1, 1913, was $117,737.24. The depletion
allowed by the Commissioner on the Cecil Mine was, for the fiscal
year ended March 31, 1918, $1,767.09, and for the fiscal year ended
March 31, 1919, $1,092.56, which was computed at a rate of 3.46 cents
per ton. The said depletion rate was arrived at by the Commissioner
by estimating the coal content of the said Cecil Mine to be 4,965,576
tons on March 1, 1913, and the fair market value of the depletable
property on March 1, 1913, of the Cecil Mine to be $171,808.96.

The Commissioner admits the petitioner is entitled to deductions
from income on account of depletion of coal deposit and development

of the Cecil Mine for the fiscal year ended March 31, 1918, of $1,873.51 and for the fiscal year ended March 31, 1919, $1,158.36, which is computed at a rate of 3.66837 cents per ton. The said depletion rate is arrived at by the Commissioner by estimating the coal content of the Cecil Mine to be 4,681,577 tons on March 1, 1913, and the fair market value as of March 1, 1913, of said coal deposit and development located in the Cecil Mine to be $171,737.24.

The petitioner's net taxable income, before depletion deductions on the Cecil Mine and after all of the other charges, was for the fiscal year ended March 31, 1918, $51,836.59, and for the fiscal year ended March 31, 1919, $51,234.36.

The tons of coal mined by the petitioner during the fiscal year ended March 31, 1918, from the Cecil Mine was 51,072 tons and during the fiscal year ended March 31, 1919, 31,577 tons.

A reasonable estimate of the tons of coal in place in the Cecil Mine on March 1, 1913, was 4,681,577 tons.

A reasonable estimate of the tons of coal in place in the Cecil Mine from March 1, 1913, to the latter part of the year 1922 was 4,681,577 tons, less the number of tons of coal mined from time to time.

By reason of conditions developed in said Cecil Mine in the latter part of the year 1922, the petitioner made tests which established that there was no additional minable coal in the 1,179 acres constituting the said Cecil Mine and the mine was totally abandoned on January 15, 1923, after only 372,206 tons of coal had been mined therefrom, and that 337,783 tons of said 372,206 tons were mined subsequent to March 1, 1913.

### OPINION.

TRAMMELL: The respondent contends that the petitioner is entitled to deductions on account of depletion sustained on the Cecil Mine for the fiscal year ended March 31, 1918, of an amount not in excess of $1,783.51 and for the fiscal year ended March 31, 1919, $1,158.36, based upon depletion rate of 3.66837 cents per ton and computed on the valuation of $171,737.24, value as of March 1, 1913, and estimated coal reserve of 4,681,577 tons as of March 1, 1913, and a deduction for the fiscal year ended March 31, 1918, of 51,072 tons and for the fiscal year ended March 31, 1919, of 31,577 tons.

The petitioner contends that it is entitled to depletion allowances on account of depletion sustained on the Cecil Mine for the fiscal year ended March 31, 1918, of $25,965.36, and for the fiscal year ended March 31, 1919, of $16,053.75, being an allowance of 50.84 cents per ton on a production of 51,072 tons mined during the fiscal year ended March 31, 1918, and 31,577 tons mined during the fiscal

year ended March 31, 1919, and based upon a fair market value as of March 1, 1913, of its depletable property of $171,737.24 and the coal content of 337,783 tons as of March 1, 1913.

The question is thus presented as to whether the depletion deductions allowed by the statute are to be determined on the basis of estimates of ore reserves determined and accepted as fair and reasonable during the taxable years for which returns were filed or whether such deductions are to be based on facts developed and ascertained and estimates made in subsequent years.

The provisions of the statute applicable are section 12 (b) of the Revenue Act of 1916 as amended by the Revenue Act of 1917, the pertinent portion of which is as follows:

In the case of mines a reasonable allowance for depletion thereof not to exceed the fair market value in the mine of the product thereof which has been mined and sold during the year for which the rate and computation are made, such reasonable allowance to be made * * * under rules and regulations to be prescribed by the Secretary of the Treasury.

Section 214 (a) (10) of the Revenue Act of 1918 provides under that Act as follows:

In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: *Provided*, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer's interest therein) on that date shall be taken in lieu of cost up to that date: *Provided further*, That in the case of mines, oil and gas wells, discovered by the taxpayer, on or after March 1, 1913, and not acquired as the result of purchase of a proven tract or lease, where the fair market value of the property is materially disproportionate to the cost, the depletion allowance shall be based upon the fair market value of the property at the date of the discovery, or within thirty days thereafter; such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee.

These provisions of the statute allow taxpayers reasonable deductions from gross income on account of depletion of mines, oil and gas wells, and other natural resources. If the property was acquired before March 1, 1913, the value on that date was permitted to be returned by way of depletion allowances. There are many variable factors entering into the determination of a reasonable allowance for depletion of mines and Congress merely provided that this reasonable allowance for capital depletion should be made under rules and regulations to be prescribed by the Secretary of the Treasury under the 1916 Act, and by the Commissioner with the approval of

the Secretary under the 1918 Act. Neither statute prescribes any method by which the reasonable allowance should be determined.

Under both the Revenue Acts of 1916 and 1918, regulations were promulgated pursuant to the statute. Articles 171 and 172 of Regulations 33 and article 210 of Regulations 45 provide that the allowance for depletion for any year shall be determined by dividing the cost or the March 1, 1913, value by the number of tons or other unit of mineral estimated to be in the ground at the basic date and multiplying this quotient by the number of tons or other unit of ore mined and sold during the year. In the case of *New Creek Co.* v. *Lederer*, 295 Fed. 433, the Circuit Court of Appeals, Third Circuit, had before it for consideration whether articles 171 and 172 of Regulations 33 were in accordance with the statute. The taxpayer in that case contended that the method of determining the allowance for depletion provided for in those articles of the regulations was not the reasonable allowance for mine depletion which the statute gave it. The court held, however, that the articles of the regulations referred to were not unreasonable and did not deprive the taxpayer of the reasonable deduction allowed by the statute.

The Revenue Act of 1918 is more specific in prescribing the basis upon which the depletion allowance should be made. It provides that in the case of such property acquired prior to March 1, 1913, the fair market value of the property on that date should be taken in lieu of cost.

This statute did not prescribe any method by which a reasonable allowance during the taxable year should be determined, but left that matter to be provided for in regulations to be prescribed by the Commissioner with the approval of the Secretary. The same method for determining this allowance that had been prescribed in articles 171 and 172 of Regulations 33 were provided by Regulations of the Commissioner approved by the Secretary.

The March 1, 1913, value when ascertained is to be divided by the number of tons *estimated* to be in the mine. This quotient is to be multiplied by the number of tons sold during the year. This, in our opinion is a fair and reasonable method of arriving at the reasonable allowance for depletion provided by the statute. The contents of a mine can only be determined by estimates. The number of tons of minable coal can not be actually measured until the coal is mined. There may be many factors shown by development and discovery work carried on in subsequent years which would demonstrate that the estimates made as of the basic date, as well as during the taxable year, were erroneous, but in our opinion it was not the purpose of the statute to postpone the definite determination of taxable liability for

an indefinite number of years. Taxes should be computed on an annual basis and on the basis of facts known or ascertainable during the taxable years. The rate of depletion should be determined in this case by dividing the March 1, 1913, value by the estimated number of tons in place. It does not seem to us that Congress contemplated that the reasonable allowance for depletion provided for by statute should not be determined or be capable of determination until the contents of the mine had actually been mined and measured, or until development work of subsequent years demonstrated what the actual content of the mine was.

If the estimated ore reserves were to be definitely and finally determined only after actual demonstration or development work, it would be just as reasonable to revise the March 1, 1913, valuation for the same reason and upon the same basis. One of the factors entering into the valuation of ore deposits as of March 1, 1913, is the estimated tonnage in place.

But the petitioner does not seek to revise and lower the March 1, 1913, value as the result of the knowledge acquired by subsequent development work. It seeks to recover the established March 1, 1913, value of $171,737.24, which was arrived at when it was estimated that the ore reserves were 4,681,577 tons by revising its estimates of ore reserves upon the basis of knowledge acquired subsequent to the filing of its returns. The subsequent knowledge gained by development work indicates that the actual content of the mine was only 372,206 tons. With the actual tonnage of the smaller amount the petitioner contends that the valuation as of March 1, 1913, determined on estimates of the reserves of 4,681,577 tons should be returned by depletion allowances by revising the estimates of coal reserves, but not the March 1, 1913, value. We see no more reason for altering or revising the estimate of ore reserves as established on the factors known and conditions existing on the basic date and during the taxable years than for changing the March 1, 1913, valuation as the result of subsequent events.

It was stipulated in this case that a fair estimate of the coal reserves of the Cecil Mine on March 1, 1913, was 4,681,577 tons. It was not until the latter part of 1922, which was after the returns for 1918 and 1919 had been filed that the petitioner discovered that this estimate was inaccurate and that the number of tons of minable coal in the mine was materially less than the number estimated as of the basic date.

In *Stouts Mountain Coal Co.* v. *Commissioner*, 4 B. T. A. 1292, we had a similar state of facts before us. There we said:

* * * At the time the petitioner started operations, and during the year 1920, it believed that the recoverable tons of coal in its property were 400,000.

It developed, however, prior to the close of its fiscal year ended October 31, 1921, that the recoverable tons were in all not in excess of 75,000. The depletion deduction for such year is the undepleted cost of the coal in place at the beginning of such year; in other words, the undepleted cost on November 1, 1920, should be spread over the number of tons of coal removed during the fiscal year ended October 31, 1921. Only in this way will the petitioner be allowed to recover from gross income, as a depletion deduction during the life of the mine, the undepleted cost of the coal in place at the beginning of the taxable year.

We think that this method is sound and by the application of it the petitioner would be entitled to the reasonable allowance for depletion as provided by the statute.

The rule contended for by the petitioner is that in the case of mines the rate of depletion applicable for any year is contingent upon the determination of the reserves in the ground as ascertained by the development prosecuted and carried on in subsequent years. Under this rule there would be no time until the end of the life of a mine or at least there would be an indefinite length of time before a final estimate of the recoverable coal in place could be made. The petitioner contends that unless it is given the right in this case to revise its depletion allowances for 1917, 1918, and 1919 upon an estimate of reserves made in 1922, it will not have returned to it its capital tax-free. In our opinion, this contention is not sound. In the first place, a taxpayer is entitled only to a reasonable allowance for depletion, and that reasonable allowance must of necessity be computed upon the basis of factors known to exist during the year for which the return was filed. It is not in our opinion the purpose of the statute to permit taxpayers to determine their net incomes for a given year on the basis of facts developed in the future.

Under our decision in *Stouts Mountain Coal Co.* v. *Commissioner*, *supra*, if subsequent developments show that a material error has been made in the original estimates of the ore reserves, a new estimate may be made, and the capital remaining to be recovered distributed accordingly. This is in accordance with article 209 of Regulations 45, and in our opinion is a fair and reasonable interpretation of the statute. To the extent that our opinion in *Appeal of Kehota Mining Co.*, 3 B. T. A. 885, is inconsistent with the views herein expressed, it will not be followed in the future.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*