JAMES R. McCAHILL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRANCIS T. McCAHILL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EUGENE P. McCAHILL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CHARLES M. DENNY, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CATHERINE M. LANE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 69743-69746, 69766. Promulgated February 13, 1934.

*Guy Chase, Esq.*, for the petitioners.
*James K. Polk, Jr., Esq.*, for the respondent.

## OPINION.

LANSDON: The single issue here is whether the ore content of a mine, valued in 1922 for estate tax purposes at $206,662.24, may be revalued later as a basis for computing deductions from income on

account of depletion. The Revenue Act of 1928 provides for a reasonable allowance for depletion and that the basis for the computation thereof, when the property is transmitted by death of a prior owner, shall be its fair market value at the time of death. In this proceeding the prior owner died on August 14, 1922, and by the terms of her will the property in controversy was later distributed to the trustees. In such circumstances the property is deemed to have been acquired by the trust on the date of death of the testator. *Gage* v. *Brewster*, 280 U.S. 327; *Security Trust Co.*, 25 B.T.A. 29; affd., 65 Fed. (2d) 877.

The facts disclose that after the death of the testator, appraisers duly appointed by a court of competent jurisdiction determined that on August 14, 1922, the property in controversy had a value of $206,-662.24. This appraisal was based on data on file in the offices of the Minnesota State Tax Commission. Taking the estimated tonnage from such records and applying the royalty rate, less expense, the present worth thereof on the basis of a seven-year life of the mine was computed in the amount above set out. The estimated tonnage and computation of value were not made personally by the executors, who had no practical knowledge of such matters, but by other persons employed for such purposes. The value so computed was included in the inventory of decedent's estate attached to the Federal estate tax return duly filed by the executors. In so doing the executors acted in good faith. Upon audit of such return a deficiency was determined by the Commissioner, and on petition to the Board the controversy was finally settled and closed by order of the Board at Docket No. 31743, on December 30, 1930, about two years before the deficiency notices herein were mailed to the several petitioners, and the statute of limitations has now run against any additional estate tax. At no time during the pendency of such estate tax proceedings did the Commissioner question the correctness of the appraisal as of the date of the decedent's death.

The rate of depletion necessary to exhaust the value of the ore reserve determined by the appraisal was applied to the tonnage produced annually and deductions based thereon were allowed by the respondent until some time in 1928, when the entire original valuation was exhausted, and since then no depletion has been allowed. About 1925 it was discovered that the tonnage estimate of August 14, 1922, was very much too low, but no new estimate or valuation was made at that time. By the middle of 1928 such estimated tonnage had all been recovered. For the remainder of 1928 and the taxable years 1929 and 1930 ore in excess of the original estimate was mined and shipped in the respective quantities of 340,255, 557,403, and 435,260 tons.

In 1932, at the request of the petitioners, an experienced and competent engineer, long familiar with the geology of the Mesaba Range, made a new estimate of the tonnage recoverable from the mine as of August 14, 1922. This estimate was based only on information accessible in 1922, but its preparation involved the use of the so-called "slump theory", which was known to very few mining engineers in 1922, but was generally used in 1932. We are satisfied that such estimate is approximately correct and that at the basic date there were at least 4,723,109 tons of recoverable ore in the mine.

The petitioners contend that upon the basis of the facts they should be allowed depletion during the remaining life of the mine after January 1, 1929, sufficient to recover the amount of the 1922 value which they now claim. In support of this contention they rely on the statutory provision which entitles them to reasonable allowances on account of depletion, and Regulations 74, articles 228 and 229.[1] This Board and the courts have held that if an estimate of reserves at the basic date is erroneous, depletion allowance after discovery of error may be adjusted in accordance with facts not known at the date of the original estimate. In every instance, however, it was expressly set out that the sole purpose of the adjustment was to enable the taxpayer to recover the capital cost of the ore reserves without tax. *Big Four Oil & Gas Co.*, 28 B.T.A. 61; *Stouts Mountain Coal Co.*, 4 B.T.A. 1292; *Sterling Coal Co., Ltd.*, 8 B.T.A. 549. In none of these cases was there any controversy over the total amount of cost or value to be recovered, and our decision related only to the redetermination of the unit of depletion necessary to exhaust the remaining unrecovered capital cost during the life of the property. In passing upon a similar question in *Kehota Mining Co.* v. *Lewellyn*, 28 Fed. (2d) 995; affd., 30 Fed. (2d) 817; certiorari denied, 219 U.S. 864, the court said: "Under the language of this regulation it is perfectly plain that the new estimate is only to be applied to the capital remaining to be recovered", and further laid down the principle now recognized as governing the depletion of all natural resource reserves, except oil and gas, that "The taxpayer is entitled to recover the cost of the property by way of depletion."

In our opinion the above cited authorities relied on by the petitioner have no bearing on the exact question here, which is the

---

[1] ART. 228. * * * No revaluation of a property whose value as of the basic date has been determined and approved will be made or allowed during the continuance of the ownership under which the value was so determined and approved, except in the case of a subsequent discovery as defined in article 240, or of misrepresentation or fraud or gross error as to any facts determinable on the basic date. Revaluation on account of misrepresentation or fraud or such gross error will be made only with the written approval of the Commissioner. * * *

ART. 229 * * *

When information subsequently obtained clearly shows the estimate to have been materially erroneous, it may be revised with the approval of the Commissioner.

contention of the petitioner that it is entitled to revalue the ore reserve acquired in 1922, and then valued at $206,662.24, for the purpose of exhausting such new value by the application of an adjusted rate of depletion thereto. It is obvious, of course, that if the reserve in question had been acquired by purchase after March 1, 1913, this question would not be here and the only function of the Board would be to adjust the depletion rate to enable the petitioner to recover the unexhausted cost at the date to which the new estimate of recoverable tonnage is applicable. Here the petitioners have no cost, and their basis for depletion is an estimated value at date of acquisition.

In the Revenue Act of 1928 it is provided, that in the case of property transmitted by death the basis upon which depletion is to be allowed shall be the fair market value of the property at the time of the death of the decedent. Article 221 (b) of Regulations 74 defines fair market value as that amount which would induce a willing seller to sell and a willing buyer to purchase. Article 226 (a) provides that:

(a) * * * Where the fair market value of the property at a specified date is the basis for depletion and depreciation deductions, such value must be determined, subject to approval or revision by the Commissioner, by the owner of the property in the light of the conditions and circumstances known at that date, regardless of later discoveries or developments in the property or subsequent improvements in methods of extraction and treatment of the mineral product. * * *

At the basic date herein the fair market value of petitioners' ore reserve was estimated in exact conformity with the regulations. It was approved and has never been revised by the Commissioner, and depletion deductions completely exhausting such value have been allowed. Upon the evidence it is perfectly clear that the value of $206,662.24 was based on all the information known at that time. Article 228 states that no revaluation so determined and approved will be allowed during the continuation of the ownership under which such value was determined, except in case of subsequent discovery as defined in article 240 or of misrepresentation, fraud, or gross error as to any facts determinable on the basic date, and this only with the written permission of the Commissioner. The present question is not within the purview of article 240, which relates to discovery value. Neither misrepresentation nor fraud is alleged and it is clear that the executors acted in good faith. We are equally convinced that there was no gross error as to facts determinable at that time. The Commissioner has not granted written permission authorizing revaluation. It follows, therefore, that petitioners' claim must be denied, because the value determined in 1922 was the fair market value of the property at that time and such value is the

amount which petitioners are entitled to exhaust by depletion allowances. *Baucum* v. *Arkansas Power & Light Co.*, 15 S.W. 1261; *J. J. White Lumber Co.*, 24 B.T.A. 274.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

TRAMMELL, dissenting: In my opinion, the question is, What was the value of the ore property at the basic date? My view is that the evidence shows that the original valuation was erroneous and should be corrected, not on any evidence subsequently developed or based on subsequent events, but on account of gross error in the original valuation.