**PERKINS et al. v. THOMAS, Collector of Internal Revenue.**

**Nos. 8172, 8219.**

Circuit Court of Appeals, Fifth Circuit.

Dec. 18, 1936.

v. Burnet, 64 F.(2d) 965, from the Eighth Circuit, to our later case of Commissioner v. Fleming, 82 F.(2d) 324, 325. On another item the Perkins were shown to have purchased an interest in a tract of Texas land in 1924 for $10,000, largely because of its supposed mineral content, and had in 1928 made an oil and gas lease on it, getting a bonus therefor of about $45,000, and in the tax year 1933 they sold all their remaining interest in the minerals in the land for about $36,000. The land was completely disposed of in 1936 for about $7,000 more. In their tax return for 1928 the taxpayers claimed, but were disallowed, any return of capital by depletion or otherwise in taxing the bonus money. In 1933 the Commissioner again refused any deduction from the receipts from the sale of the minerals. The District Judge, upon uncontroverted evidence that when the land was purchased three-fourths of its value was fairly attributable to its minerals, allowed deduction of $7,500 as cost of the interests sold. The collector appeals on account of this latter ruling, and the taxpayers on account of the former.

Harry C. Weeks, of Wichita Falls, Tex., for Perkins and another.

Milford S. Zimmerman, Sp. Asst. to the Atty. Gen., Clyde O. Eastus, U. S. Atty., and Frank B. Potter, Asst. U. S. Atty., both of Fort Worth, Tex., and J. L. Backstrom, Sp. Atty., Treasury Department, of Dallas, Tex., for Thomas.

Before FOSTER and SIBLEY, Circuit Judges, and STRUM, District Judge.

SIBLEY, Circuit Judge.

Additional income taxes for the year 1933 were assessed against and paid by J. J. Perkins and his wife, Lois Perkins. Denied refund, they sued the collector of internal revenue in the District Court, waiving jury trial. There was no conflict in the evidence. During 1931 they acquired along with others a transfer of an oil and gas lease on Texas land made in consideration of a small amount of cash and of $395,000 to be paid out of oil produced and saved. During the tax year 1933, oil having been discovered, large sums were paid to the transferors of the lease on account of this "oil payment." The Commissioner considered these sums to be income of the transferees subject to tax, though immediately paid over to the transferors, and assessed additional taxes accordingly. The District Judge upheld him, preferring the reasoning in our case of Pugh v. Commissioner, 49 F.(2d) 76, and Comar Oil Co.

We will examine first the cost deduction. The taxpayers invested $10,000 in the purchased land, including its minerals. They must be allowed a recovery of their investment, since gain only can be constitutionally taxed as income. Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570. The statutes provide for the deduction of cost from purchase money in simple sales, and for depletion deductions where exhaustible elements of the land are drawn upon in realizing income from it otherwise than by a sale. Though in Texas an oil lease is a conveyance of an interest in land, for income tax purposes the lease is treated not as a sale but a means of getting income from the land, and not only the royalty as rent but the bonus or lump consideration also is income from the land. Burnet v. Harmel, 287 U. S. 103, 53 S.Ct. 74, 77 L.Ed. 199. The recovery of capital to be lost in the contemplated withdrawal of the oil and paid for in advance by the bonus is taken care of by the depletion allowance to be deducted therefrom. Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489. The taxpayers here were entitled to a depletion allowance when they made their lease for a bonus in 1928, whether they got it or not; and on a subsequent sale the statute requires that in making a deduction for cost

previous deductions for depletion shall be taken into consideration. Revenue Act 1932, § 113 (b) (1), 26 U.S.C.A. § 113 note. "Proper adjustment in respect of the property shall in all cases be made * * * (B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount allowable) under this Act [chapter] or prior income tax laws. Where for any taxable year prior to the taxable year 1932 the depletion allowance was based on discovery value or a percentage of income, then the adjustment for depletion for such year shall be based on the depletion which would have been allowable for such year if computed without reference to discovery value or a percentage of income." The sentence last quoted applies to the bonus received in 1928 for the oil lease. At that time the depletion allowance, if one had been made, would have been based on discovery value, or would have included that value in the percentage rate fixed by Congress; so that in making the adjustment on the sale in 1933 the whole allowance in 1928 would not be deducted from the cost but only a less amount reflecting a depletion based on original cost. The collector is wrong in contending that the whole cost of the property is offset by the percentage depletion allowance that could have been made in 1928. He is wrong both because such percentage depletion is forbidden to be used in the adjustment as just pointed out, with the result that a depletion short of exhaustion can never properly exceed the whole cost; and wrong because a depletion allowance in 1928 was expressly refused. We have not a case where the taxpayer neglected to claim his deduction at the time it was due him and thus lost it. It was claimed and disallowed, and, as Palmer v. Bender, supra, had not then been decided, the ruling was acquiesced in as correct. It is manifestly unjust to allow the government, having thus informed the taxpayer he could not have the deduction for his invested capital in 1928, now to say he could have it only then. Nor does the statute require any such attitude, for as above quoted it requires only that "proper adjustment" shall be made. Under the circumstances here disclosed, nothing should be deducted from the cost basis because of this depletion allowance for 1928 which was claimed but was rejected.

■ The minerals were sold out in 1933 but not the surface rights. The District Judge apportioned the cost between the estate sold and that retained. This was found practicable and is fair. No regulation has been cited to us to the contrary. The minerals in the ground may be sold separately from the surface rights just as part of the acreage may be separately sold. When part of the whole is sold off, an apportionment of the cost is usual if it can be made. When the part retained is of little value compared to what is sold, not to allow a deduction for the cost of what is sold might result in a most unfair taxation. The action of the District Judge was correct.

■ On the question touching the oil payment we must disapprove the judgment. In dealing with income taxes in connection with transactions in oil leases, this court at first attempted to apply the peculiar law of Texas or Louisiana and the resulting technical relationships of the parties. Such decisions were made in Pugh v. Commissioner (C.C.A.) 49 F.(2d) 76; Harmel v. Commissioner (C.C.A.) 56 F.(2d) 153; and Bender v. Palmer (C.C.A.) 57 F.(2d) 32, 33. The two last were taken to the Supreme Court and reversed, Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199, Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489, that court declaring that the income tax laws ought to have a uniform operation in all states and that income and deductions ought to result in like situations everywhere; and that a broad view ought to be taken of the transactions, deductions for depletion, for instance, being allowable to all who had an "economic interest" in the reserve in the ground regardless of the technical title to it. Adopting that view, this court in Commissioner v. Fleming, 82 F.(2d) 324, 328, did not follow its decision in the Pugh Case, but said: "We have thus looked at the transaction broadly, as was done in Palmer v. Bender [287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489], and not technically, as was done in the Pugh Case." While the reasoning of the Pugh Case may be correct upon a question of title to the oil and the ordinary consequences of title, we cannot regard it as a valid authority on the present question. Since the decision of Palmer v. Bender, other circuits have reached the conclusion we came to in the Fleming Case touching the so-called "oil payments." Commissioner v. Elliott Petroleum Corp. (C.C.A.) 82 F.(2d) 193; Alexander v. Con-

tinental Petroleum Co. (C.C.A.) 63 F. (2d) 927.

The instrument transferring the lease here involved uses this language: "Now, therefore, in consideration of the sum of $10 * * * and the further sum of $395,000 to be paid out of the oil produced and saved from the hereinafter described lands, and to be one-fourth of all the oil produced and saved from the premises until the full sum of $395,000 is paid, we * * * do hereby bargain, sell, transfer and assign and convey all our rights, title and interest in and to said leases. * * * As hereinbefore stated $395,000 is to be paid to (transferors) out of the oil produced and saved from the leased premises, which payments shall be made by the pipe line Company or other purchaser of said oil and shall be one-fourth of all the oil produced and saved until the full sum of $395,000 is fully paid * * * which oil payments shall be made direct to (transferors) by the purchaser as the oil is run. The said $395,000 is payable out of oil only if, as and when produced * * * and shall not be a personal obligation of the assignee." Whosesoever may be the technical title to the oil in the ground or that produced and saved until sold, it is plain that the transferors have an economic interest in both, and a right to specific performance of the agreement to sell and pay over a fourth of the proceeds of oil produced. According to the Fleming Case they are entitled to a depletion allowance on what they get, and that means that what they receive is income and not purchase money. The share of the proceeds of the produced oil retained by the transferees is of course their income on which they too are entitled to an allowance for the depletion caused to them. But the portion of the proceeds going to the transferors is not the income of the transferees. It is not the proceeds of the transferees' oil paid over to the transferors in discharge of an obligation, as the District Judge because of the broad words of conveyance held. Looking to the whole instrument, and noting especially that the proceeds of one-fourth of the oil saved is never to be paid by the buyer to the transferee-producer, but is to be paid direct to the transferor, and that the transferee owes no money debt, but only the duty to sell the oil and submit to a division of the proceeds by the purchaser of the oil, we think it clear that for taxing purposes this share of the proceeds received by the transferor is his income alone. The broad and general view of local transactions which has been held proper in determining whose are the depletion deductions under the federal tax statutes must for consistency's sake be applied to questions of whose is the income. The holding in this case that the proceeds of oil paid to the transferors of the lease were taxable as income to the transferee taxpayers was erroneous.

█ The taxpayers had an interest in another transferred lease somewhat like that above discussed, but the claim for refund made no mention of that lease or the payments to its transferors but confined itself to the lease which we have discussed. The taxpayer cannot over objection enlarge his suit beyond the scope of his claim for refund. United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L. Ed. 1025; Rock Island, A. & L. R. Co. v. U. S., 254 U.S. 141, 41 S.Ct. 55, 65 L.Ed. 188; Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253.

█ Error is also assigned that full costs were not allowed to the plaintiffs because they were only partially successful. This being a suit at law, the court had no discretion to divide the costs, but the plaintiffs, having recovered more than $500, were entitled to full costs. In re Peterson, 253 U.S. 300, 318, 40 S.Ct. 543, 64 L.Ed. 919; Morriss v. First National Bank (C.C.A.) 45 F.(2d) 577; Harlan Coal Co. v. North American Coal Corp. (D.C.) 35 F.(2d) 211; Merritt v. Merritt (D.C.) 20 F.(2d) 541. The rule was applied in a suit against a collector of internal revenue in West End Street Ry. Co. v. Malley, Collector (C.C.A.) 246 F. 625.

The exclusion from the taxpayers' income of the "oil payments" will necessitate an adjustment of their depletion allowance and possibly other things. The adjustment can be best made in the trial court. The judgment is reversed and the cause remanded for further proceedings consistent herewith.