COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

SUPERIOR YARN MILLS, Inc., Respondent.

No. 7058.

United States Court of Appeals Fourth Circuit.

Argued Oct. 18, 1955.

Decided Dec. 21, 1955.

C. Moxley Featherston, Atty., Dept. of Justice, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Hilbert P. Zarky, and Harry Baum, Attys., Dept. of Justice, Washington, D. C., on brief), for petitioner.

David R. Shelton, Washington, D. C., for respondent.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and BRYAN, District Judge.

BRYAN, District Judge.

On its petition for a redetermination of deficiency assessments of income and excess profits taxes for 1944,

1945 and 1946, Superior Yarn Mills, Inc. has been allowed by the Tax Court to increase from $243,592 to $316,670—an added $73,078—the sum originally allocated by the taxpayer as the cost basis of the depreciable items of the plant it purchased in 1929 for $500,000. In framing an order to effectuate the Tax Court's conclusion, under its Rule 50, 26 U.S.C. § 7453, the Commissioner of Internal Revenue insisted that for use in 1944 the new cost base must be adjusted by deduction of the amount of depreciation theretofore allowed for the period 1929 to 1944, as well as of the sum allowable over the same years for depreciation on the cost-accession. Contra, the taxpayer contended that to find the adjusted cost basis for 1944, the only depreciation deductible was the amount which had actually been allowed for the 1929–1944 depreciation—that no deduction could be made in those years for depreciation of the increment.

The argument of the Commissioner was that only the new or correct cost base could be used for the descendent adjustment of the original cost base from 1929 to the tax years in question; that under sections 114(a) and 113(a) and 113(b) (1) (B) of the Internal Revenue Code, such adjusted basis must be the cost less the depreciation "to the extent allowed (but not less than the amount allowable)"; and that to use the old base or to deduct only the depreciation theretofore allowed, as the taxpayer urged, would violate the Revenue Act, for, indisputably, the new base was the correct base, and depreciation was allowable against the entire correct base, including the increase granted by the Tax Court.

The taxpayer argued (a) that the claim for depreciation in excess of that allowed before 1944 was never advanced at the trial and could not be pressed for the first time on a Rule 50 computation; (b) that to discount the whole of the new 1929 cost base for depreciation from 1929 to 1944 would be penally inequitable, for depreciation on the increment

was neither allowed nor allowable in those years, inasmuch as the facts warranting the increase were then unknown; (c) that it is unfair also because the taxpayer did claim more depreciation during 1929 to 1944 than he was allowed and he is now barred by time from obtaining credit for the deductions demanded by the Commissioner; and (d) that the Commissioner is asking the Tax Court here to apply depreciation retroactively and this it has no power to do.

The Tax Court sided with the taxpayer and the Commissioner appeals. The Tax Court was of the opinion that the new 1929 cost basis was found only for 1944 and post years, that it could not be used for any purpose before 1944 because it was not known in that period, and that to arrive at the adjusted cost basis for 1944, depreciation must be computed on the former 1929 cost basis. We think the Tax Court was in error, the Commissioner right.

Superior Yarn Mills, Inc. is a North Carolina corporation whose capital stock is owned in toto by the Duke Power Company, a producer and distributor of electricity throughout the piedmont areas of North and South Carolina. With funds borrowed from Duke, Superior on April 2, 1929, purchased the Long Island Cotton Mills plant situated on the Catawba River in North Carolina, consisting of machinery, mill buildings, water wheels, dam mill villages, water and sewer lines, and cotton stock in process and yarn on hand, as well as 565 acres of land, on which the plant is located and through which the river flows. As the proprietor on both sides of the river at this point, Superior was vested with the common law rights of a riparian owner, embracing the privileges of damming the water and flooding the adjacent land and designated in this litigation as water power rights or water rights. The dam impounded the waters of the Catawba and the head thus created was sluiced onto several water wheels, one providing direct power to

certain machinery and the others generating electric current for use in the plant generally.

Superior paid $500,000.00 for the plant. As did the Tax Court, we use that figure as the cost throughout the discussion of the principles governing this case, omitting reference to the subordinate additions and transfers made from time to time. The 1929 purchase was immediately entered on Superior's general ledger in a single, unbroken sum as "Long Island Plant $500,000.00." For 1929, 1930, 1931 and 1932 the taxpayer claimed depreciation of $12,012, $16,-000, $16,000 and $12,000, respectively. In 1934, on the advice of one Bell, an engineer and architect employed to appraise the plant, the taxpayer assigned $243,592.28 of the total purchase price to the 1929 cost of the depreciable parts of the plant. The remaining $256,407.72 was allocated to "unclassified intangibles". At the direction of the taxpayer he allotted no amount of the purchase price to the 565 acres or for water rights.

Taxpayer's income returns for the years 1933 to 1944, inclusive, followed the Bell valuation and division of price in claiming depreciation. As so claimed the depreciation was allowed each year thereafter through 1944. In 1945 the taxpayer raised by $239,907.72 the amount of the purchase price to be apportioned, as of 1929, to the cost of the depreciables; it set $16,500 as the cost of the land, but still allotted no separate amount to water rights. In doing so it retroactively attributed a total cost of $483,500 to all assets, except land, acquired on April 2, 1929; this amount, with the acreage at $16,500, obviously accounts for the entire original cost of $500,000. This enhancement of the depreciables was not accomplished by bringing into that category any property not initially so classified; it was effected by ascribing a greater value, as of April 2, 1929, to the items already placed in that class by Bell.

The Bell "breakdown" and the 1945 write-up were spread among the several book accounts as follows:

| | Bell Appraisal | 1945 Additions | Reappraisal Total |
|---|---|---|---|
| Machinery | $ 71,510.15 | $127,623.17 | $199,133.32 |
| Mill bldgs. | 42,436.23 | 37,941.50 | 80,377.73 |
| Dam | 69,767.76 | 20,500.63 | 90,268.39 |
| Mill villages | 34,836.82 | 31,262.29 | 66,099.11 |
| Water & sewer lines | 19,478.79 | 7,997.47 | 27,476.26 |
| Water wheel & shaft | 2,962.53 | 17,182.66 | 20,145.19 |
| Wells | 2,600.00 | | |
| "Unclassified Intangibles" | 256,407.72 | 0.00 | |
| Less Wells [1] | | 2,600.00 | |
| Land | 0.00 | 0.00 | 16,500.00 |
| | $500,000.00 | $239,907.72 | $500,000.00 |

The 1945 elevation was advised and made by A. B. Hossack, a tax consultant. The difference between the Hossack and Bell reports appears principally in two considerations: Hossack concluded that Bell had underestimated the cost in buildings by approximately $200,000.00, and he observed surviving serviceable life in certain other items where Bell had seen none.

All the "hydraulic facilities" acquired in 1929 were abandoned in 1945 as worthless, save as salvage, and Superior contracted with Duke to supply its electric energy requirements. Hossack had been engaged to formulate adjusted cost bases for 1944, 1945 and 1946, respectively, of the plant acquisition of 1929, for use in determining the amount of the abandonment loss and in fixing the annual depreciation in these years. To show that depreciables were entitled to, every dollar of the purchase price, except the land's value, the taxpayer strove to establish in the Tax Court that the water power rights were never of any value, or, alternatively, that they should be treated as a part of the hydro-electric generating facilities and abandoned with them. Income tax returns for the three years were predicated on the Hossack figures.

The Commissioner rejected the upward readjustments of the Hossack appraisal, held the taxpayer to the cost figures carried on its books since 1933, that is, to the Bell cost-separation, and assessed the deficiencies initially in contest. On review the Tax Court gave consideration to both appraisals and much other evidence. It found that the water power rights were of substantial value; but it also found "that the cost to petitioner for tax purposes of depreciable tangibles was somewhat in excess of the original figure". The Court concluded that the correct cost base in 1929 of the expendables was the amount of the Bell estimate increased by 30%. Applied, this judgment took 30% of the $243,592.28 assigned by Bell to depreciable properties, or $73,078.00, and added this product to the $243,592.28, giving a total of $316,670.00; it made no assignment of the balance of the $500,000 cost price.

On this appeal both the taxpayer and the Commissioner accept the new cost basis declared by the Tax Court. Obviously, then, unless the point has been waived by the Commissioner as the taxpayer avers, the tax liability of Superior depends on a determination of the correct method of depreciating the original cost announced by the Tax Court.

---

1. Wells were apparently absorbed in the 1945 additions other than land.

Depreciation deductions are governed by statue and Treasury Regulations, the former consisting of these provisions of the Internal Revenue Code of 1939:

"§ 114. Basis for depreciation and depletion

"(a) Basis for depreciation. The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113(b) for the purpose of determining the gain upon the sale or other disposition of such property."

26 U.S.C.1952 ed. § 114.

"§ 113. Adjusted basis for determining gain or loss—

"(a) Basis (unadjusted) of property. The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \*

"(b) Adjusted basis. The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever required, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

"(1) General rule. Proper adjustment in respect of the property shall in all cases be made—

\* \* \* \* \* \*

"(B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount allowable) under this chapter or prior income tax laws. \* \* \*"

26 U.S.C.1952 ed., § 113.

Pertinent Treasury Regulations 111, provide:

"Sec. 29.23(1)–4:

" \* \* \* In the case of the acquisition on or after March 1, 1913, of a combination of depreciable and nondepreciable property for a lump price, as, for example, buildings and land, the capital sum to be replaced is limited to an amount which bears the same proportion to the lump price as the value of the depreciable property at the time of acquisition bears to the value of the entire property at that time. \* \* \*"

"Sec. 29.113(b) (1)–1:

"The cost or other basis must also be decreased by the amount of the deductions for exhaustion, wear and tear, obsolescence, amortization, and depletion to the extent such deductions have in respect to any period since February 28, 1913, been allowed (but such decrease shall not be less than the amount of deductions allowable) under chapter 1 or prior income tax laws. The adjustment required for any taxable year or period is the amount allowed or the amount allowable for such year or period under the law applicable thereto, whichever is the greater amount. A taxpayer is not permitted to take advantage in a later year of his prior failure to take any depreciation allowance or of his action in taking an allowance plainly inadequate under the known facts in prior years. The determination of the amount properly allowable shall, however, be made on the basis of facts reasonably known to exist at the end of such year or period. The aggregate sum of the greater of such annual amounts is the amount by which the cost or other basis of the property shall be adjusted. \* \* \*"

■ I. Its Rule 50 directs that after the Tax Court has resolved the issues, the parties shall submit computations to implement its decision. If the petitioner and respondent disagree on this determination, then the Court sets the submissions for hearing and itself settles the final order. Of course, neither party on such a hearing can inject an issue that was presented or presentable in the trial. Neglectful omission to tender an issue at the trial constitutes a waiver of it.

Bankers' Pocahontas Coal Co. v. Burnet, 1932, 287 U.S. 308, 312, 53 S.Ct. 150, 77 L.Ed. 325. We are asked to find such a waiver by the Commissioner of the point he prosecutes on this appeal.

■ But we do not agree with the taxpayer's allegation that the issue of allowable depreciation was not raised before the Tax Court prior to the Rule 50 conferences. The taxpayer had petitioned for a redetermination of the deficiencies assessed by the Commissioner; he urged the redetermination on the ground that the adjusted cost basis determined by the Commissioner was too low; and thus the question before the Tax Court was what was the correct adjusted cost basis. Necessarily depreciation was an issue in that inquiry, for, as the cited statutes and regulations make plain, depreciation is, with original cost, the co-determinant of adjusted cost. Hence, it was inbeing and indwelling in the taxpayer's petition.

Doubtless the rate of depreciation was not mooted at the trial because no additional property, but only the same items already subjected to depreciation, was under consideration, and the parties naturally assumed that no different rate would be applicable to the enlargement in value. Indeed, in his suggested computation on the newly found initial cost, the Commissioner deducts each year, from the additive 30% of every item, depreciation in the same ratio as it had been deducted from the same item annually before the 30% increase. That there would be no depreciation at all on the added value, from 1929 to 1944, was never intimated by anyone.

What is more, the findings and opinion of the Tax Court did not set the adjusted bases for the tax years, but merely determined original cost. It was a finding of $316,569.76 as the 1929 cost, not the 1944 base. Both parties recognized that depreciation was yet to be subtracted. Therefore, when the opinion directed that "Decision will be entered under Rule 50", both the Commissioner and the taxpayer were required, under that rule, then to apply the factor of depreciation; otherwise no adjusted cost basis could be stated.

II. The Tax Court has held that the new cost base could not be made effective from 1929 for computing depreciation, but that it was usable for that purpose only for 1944 and later years. This meant that the old cost figure would be the basis for ante-1944 depreciation and that no depreciation was "allowable" from 1929 to 1944 against the addition made to the cost in the new base. The Court reasoned that "not having been known, the bases may not be revised by a retroactive application of the Court's decision". Related to this conclusion of the Court are two of the propositions pressed by the taxpayer. Superior contends that it should not be charged with depreciation on the increase prior to 1944 because the increase was not then known, and for this argument, it draws on the implication of Treasury Regulations 111, sec. 29.113(b) (1)–1, supra, to the effect that a taxpayer is held to allowable depreciation, if exceeding the allowed, only when the allowability appears from "facts reasonably known to exist at the end of such year or period". The taxpayer's other proposition is that the Tax Court cannot depreciate the increase during 1929–44 for that would constitute forbidden retroactive depreciation.

The duty of the Tax Court on the petition for redetermination was to declare the adjusted cost bases for 1944–5–6, respectively. In so doing it was bound to adhere to the statute and regulations. As we see it, the statute required the Court to start with the original cost; and the regulations required, in the circumstances here, that the cost "should be the value of the depreciable property at the time of acquisition". Thereafter, the statute directed, the original cost must be reduced by the aggregate annual depreciation allowed, not less than the allowable. The failure of the Tax Court in this instance to carry the new cost base back to 1929 and adjust it by subtraction of the depreciation allowable from then

until 1944, was error, a violation of the statute and regulations. Blackhawk-Perry Corp. v. Commissioner of Internal Revenue, 8 Cir., 1950, 182 F.2d 319, certiorari denied 340 U.S. 875, 71 S.Ct. 120, 95 L.Ed. 636.

True, the new 1929 base was not declared in any year prior to 1945, but that is no reason for not making it effective as of 1929. No matter when found, it is still the 1929 base, and must be subjected to the depreciation of subsequent years.

Irrespective of its power, the Tax Court has not been asked to apply depreciation retroactively. That process connotes the application to earlier years of a rate affected by conditions of a later date. Here the process will involve a contemporaneous rate contemporaneously applied. Having found the 1929 cost basis, the Court should for that, and every year thereafter through 1946, ascertain, as of the end of each year, what amount represents the exhaustion for such year, using a rate determined by the conditions prevalent in that year. The new 1929 cost basis will in this manner be downgraded annually for wear and tear and the remaining unrecovered cost will be the adjusted cost basis. If this be depreciating retroactively, it is nevertheless valid, for it is the prescription of the statute and regulations.

Taxpayer dubs this procedure as hindsight calculation, said to be unacceptable in taxation. As just explained, we do not think it can be so impugned. But it was the taxpayer who first invoked the Tax Court's hind-vision; it asked the Court to revert to 1929 and enlarge the 1929 cost base. More, Superior candidly concedes in its brief that the Government could have "raised the issue as to prior year allowable depreciation upon the trial of this case or upon a duly granted motion for rehearing"—seemingly a concession that prior allowable depreciation was a subject justiciable by the Tax Court.

The resulting hybrid adjusted basis exposes the frailty of the Tax Court's conclusion. One portion of the value in each item of the properties would be depreciated, while the remaining value therein would be undepreciated. Besides, it is contrary to reality—a touchstone in taxation—since the increment, in truth, was not preserved intact until 1944 but suffered depreciation in the same degree and at the same time as did the original valuation.

Both the Tax Court and the taxpayer feel their reciprocal and complementing positions—that the new base cannot be used as the depreciation multiplicand in the 1929–1944 period and that the increment of cost is not depreciable earlier than 1944—are precedented by such decisions as Sample-Durick Co. Inc., 35 B.T.A. 1186; Commissioner of Internal Revenue v. Mutual Fertilizer Co., 5 Cir., 159 F.2d 470; and Commissioner of Internal Revenue v. Cleveland Adolph Mayer Realty Corp., 6 Cir., 160 F.2d 1012. These cases only declare that the annual rate of depreciation must be fixed on the strength of circumstances obtaining before and during the year of the charge, and that, once so fixed for any year or period of years, the rate cannot be changed retroactively by an alteration in the estimated life of the property. But this is not to say that original cost cannot in a subsequent year be determined from conditions existing in the year of acquisition, and then be used as the cost in reaching an adjusted base; if it were, then original cost could never be ascertained in the years following. Adding to the cost base, through recalculation of it as of the time of acquisition, is not a modification of the estimated life of the property. Furthermore, the very nature of original cost renders any subsequent change in it a retroactive change.

III. No inequity is imposed upon the taxpayer by relating the new cost basis to 1929 for purposes of adjustment. If, as Superior complains, it has not received the credits to which it would have been entitled, for the depreciation to be charged to the new increment of cost, and is prevented now by time limitations from

procuring the credits, the ready response is that the taxpayer will, nevertheless, profit by the increase of the cost base and it must accept the burdens with the benefits. The taxpayer and not the Government was responsible for the lapse of the opportunity to claim the credits; not until 1945 did the taxpayer ask for the increase in cost.

Superior contends that it claimed, but was refused, a depreciation greater than was allowed each year from 1929 to 1944. Accordingly, it denounces as unfair the enforcement now by the Commissioner of any assessment which penalizes the taxpayer by charging allowable but not allowed depreciation. Perkins v. Thomas, 5 Cir., 1936, 86 F.2d 954. Though not clear with respect to the years 1929 to 1932, inclusive, the record discloses no refusal by the Commissioner to accord the taxpayer every depreciation allowance requested from 1933 to 1944. Of course, this position of the taxpayer is at odds with its contention that the depreciation now asked by the Commissioner should not be charged because it was not known in the period 1929–44. Obviously, too, the taxpayer did not previously seek the depreciation now asserted by the Commissioner, for the increment was not established for 1929 until 1945. The taxpayer also protests that it has never been heard by the Tax Court on whether the allowed depreciation was not in fact actually the equivalent of the allowable deduction from 1929 to 1944. An opportunity to be heard on both of these grievances, if such they be, will be afforded the respondents in the Tax Court under the terms of our remittitur.

We hold that the 30% increase placed by the Tax Court upon the 1929 cost of depreciables, as fixed by Bell, must be depreciated annually from that year through the tax years. Therefore, we reverse the decision of the Tax Court and remand the case to it for a redetermination of the taxpayer's liability. The redetermination should be made in the light of our decision on depreciation and upon consideration of the taxpayer's contentions, if sustained in the evidence upon further hearing, that in prior years taxpayer was refused greater depreciation than has been taken, and that, even with the 30% increment included, the sums already deducted for depreciation represent all the depreciation chargeable against the exhaustible property.

Reversed and remanded.

PARKER, Chief Judge (dissenting).

I think that the decision of the Tax Court should be affirmed for reasons adequately stated in its opinion. The question before that court was the proper allocation between depreciable and non-depreciable assets of the price of $500,000 paid for the property in 1929. This was not a matter readily determinable, like the price paid for a piece of machinery, but rested largely in opinion. The valuation of $243,592.28 placed upon the depreciable assets in 1934 was found by the Tax Court to be too low after the abandonment of the water power in 1945; and that court after a careful hearing found that the depreciable assets at the time of their purchase in 1929 had a value of $316,670. In the meantime taxpayer had been taking depreciation on only $243,592.28, or depreciation considerably less than would have been taken on the basis of $316,670.

The question here involved is not the simple one of valuing the property as of 1944 but whether, when it is valued as of 1929, it should be depreciated for the intervening years in the full amount allowable on that valuation or in the amount actually allowed, which was the maximum then allowable on the existing valuation. If depreciated for the intervening years on the full 1929 valuation as made in 1944, taxpayer will lose the benefit of depreciation to which it is justly entitled, as it cannot go back and amend its returns. If depreciated in accordance with the amount of depreciation actually allowed during the intervening years, the value added by the reappraisal

will be depreciated through the remaining life of the property, which will result in substantial justice, even though there is a "bunching" of depreciation on the added value in the remaining years. The real question then is whether the right to this depreciation has been permanently lost to the taxpayer or whether the increased value found by the Tax Court may be depreciated through the remaining life of the property. It seems clear to me that the Tax Court has given the correct answer to this question.

A change in original valuation based on fuller knowledge of the facts should no more be made retroactive for purposes of computing depreciation than a change of depreciation rate based on fuller knowledge. As said by the Court of Appeals of the Sixth Circuit in Commissioner of Internal Revenue v. Cleveland Adolph Mayer Realty Corp., 160 F.2d 1012, 1015, a case involving a change in the depreciation rate: "And if depreciation is to be taken each year, if must perforce be taken upon the basis of the understanding of value, existing at that time (at the end of the accounting period), and not, as has been said, in the light of 'hindsight.'" See also Commissioner of Internal Revenue v. Mutual Fertilizer Co., 5 Cir., 159 F.2d 470, 471 which quotes the Regulation 19.113(b)(1)-1, providing "'The determination of the amount properly allowable shall, however, be made on the basis of facts reasonably known to exist at the end of such year or period.'" In the case last cited the court said:

"The error of The Tax Court lies in its majority's view that it 'now appears', years after the end of the periods for which 'allowable' amounts must be determined, that 33 years is and was the foreseeable useful life of the plant assets. The crucial factor is not what 'now appears', but what 'then appeared' to be the useful life of the plant; that is, what reasonably was known and ascertainable at the end of each of such periods as to the reasonably foreseeable useful life of the plant."

In Sample-Durick Co., 35 B.T.A. 1186, 1189, the Board of Tax Appeals said:

"The reported cases reveal that this question has arisen principally in cases involving depletion allowances. Where the basis has proven to be materially erroneous the Board has allowed a revision of the estimated content in order to properly deplete the natural resource. The revised estimate is then depleted over the remaining life; it cannot be carried back and the allowances for prior years revised. Sterling Coal Co. Ltd., 8 B.T.A. 549; James R. McCahill, 29 B.T.A. 1080; Big Four Oil & Gas Co., 28 B.T.A. 61, aff[irme]d Big Four Oil & Gas Co. v. Commissioner [3 Cir.], 83 F.2d 891.

"The same principle is applicable here although we are concerned with a depreciation allowance. This allowance is for the purpose of correctly reflecting a taxpayer's net income, and if the depreciation allowance properly reflects net income or net loss under the known facts for the taxable year, the deduction should stand. Cf. Du[e]senberg, Inc. [of Delaware] v. Commissioner [7 Cir.], 84 F.2d 921, affirming 31 B.T.A. 922. *Facts that are subsequently developed should be reflected in the allowances for subsequent years, but they should have no retroactive force or effect.* Alpin J. Cameron et al., 8 B.T.A. 120; Firemen's Insurance Co., 30 B.T.A. 1004, 1011, and cases there cited." (Italics supplied).

I would affirm the decision of the Tax Court, which because of its wide experience in tax matters has peculiar competence in dealing with questions of this character.