A. Glendon JOHNSON, Administrator, c.t.a., Estate of A. Gales Johnson, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 8508.

United States Court of Appeals Fourth Circuit.

Argued March 28, 1962.

Decided April 27, 1962.

A. Glendon Johnson, pro se.

Crombie J. D. Garrett, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, on the brief), for respondent.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BRYAN, Circuit Judges.

HAYNSWORTH, Circuit Judge.

This case is here for the third time. It is another phase of a protracted controversy over depreciation of certain master plans of houses, from which the taxpayer made blue prints and material lists for sale to customers.

All of these master plans had been appraised for estate tax purposes, as of the date of death of their former owner in 1950, at $173,055. The administrator of the estate of the former owner sought to use the estate tax basis as the basis of depreciation deductions on his income tax returns for the fiscal years 1951 and 1952. However, because certain of the master plans had been dropped from a recently published catalog, he sought to allocate the basis of those plans to the other master plans advertised in the current publication. Differences developed between the taxpayer and the Commissioner as a result of which the taxpayer was limited to a depreciation base some $11,000 less than the basis upon which the estate taxes had been assessed and paid.

When the case was first before us, we held that the taxpayer was entitled to depreciation on the cost basis of some fourteen master plans, which, though omitted from the most recent catalog, were still generating current income because orders were still being received for blue prints taken from them. We remanded the case to the Tax Court to recompute the allowable depreciation.[1]

Upon the remand, the Tax Court was of the opinion that our decision left it no discretion as to the applicable rate of depreciation. It recomputed depreciation upon the basis of an estimate of a twenty-year life for the plans in controversy. Twenty years was also the estimated life of those master plans included in the most recent catalog.

When the case again came before us, we held that our remand was not intended to foreclose the Tax Court's determination of a proper rate of depreciation for these plans, and that the Tax Court should redetermine the rate based upon the relevant factual considerations.[2]

On the second remand, the Tax Court found that these master plans had a useful life of five years and it allowed depreciation over that period on a straight line basis. The taxpayer brings the case here for the third time, contending that he should have been allowed to take depreciation on these plans on an accelerated basis proportional to actual sales during the five-year depreciable life of the plans. He supports this contention by sales data, which indicate that, of the total sales from these plans during the five-year period following the death of his father, some sixty per cent were made in the first year and approximately twenty per cent in the second year, the two tax years in question. He thus contends that he should have been allowed depreci-

1. Johnson v. C. I. R., 4 Cir., 270 F.2d 134.

2. Johnson v. C. I. R., 4 Cir., 284 F.2d 357.

ation in the first year of sixty per cent of the basis of these plans and in the second year of twenty per cent of that basis.

Prior to the revenue act of 1954, a declining balance method for computing depreciation was sometimes allowed. It was available only if it was the method regularly employed by the taxpayer in keeping its books, it properly reflected income during the taxable year, and the taxpayer had previously obtained the Commissioner's consent to use it.[3] The taxpayer, however, does not bring himself within the provisions of I.T. 3818. Not only had he not obtained the Commissioner's prior consent to the use of that method, but he did not keep his books upon that basis, and he was depreciating plans in catalogs, current during the tax years, on a straight line basis.

Treasury Regulations 111, § 29.23(1)–5 provided that depreciation must be taken in equal annual instalments, or "in accordance with any other recognized trade practice, such as an apportionment of the capital sum over units of production." An apportionment based upon units of production was allowable, however, only where there was an immediate correlation between units of production and realized depreciation. It was applicable principally to the extractive industries where the amount of available ore, itself, determined the useful life of property employed in its extraction.

■■    Moreover, the taxpayer's approach is inconsistent with a well-recognized principle of tax accounting. As this Court has said:[4]

"  *   *   *   The annual rate of depreciation must be fixed on the strength of circumstances obtaining before and during the year of the charge   *   *   *."

Doubtless what is known and predictable at the time of the filing of the return may be considered in determining reasonable depreciation for the year involved, but taxation is made too uncertain and controversies too long extended if what is claimed or allowable as of the time the return is filed is made subject to revision and adjustment by the Commissioner or by the taxpayer in the light of events occurring several years later. What depreciation is allowable, therefore, is determinable on the basis of facts known or reasonably predictable when the return is filed and may not be made dependent upon gross sales actually realized in subsequent years.

■    The taxpayer's complaint that depreciation on a straight line basis did not permit the asset to be written off in steps proportionate to the receipt of gain ultimately realized from it is essentially criticism of a straight line method of depreciation. It is a criticism which the Congress recognized when it provided alternatives in the Revenue Act of 1954. Similar criticism is the basis of current advocacy of provision for still other alternatives. It is a criticism which could be as well directed to his depreciation of master plans still in current catalogs in 1951. With respect to them, too, or some of them, declining sales may be expected over their twenty-year life expectancy. When any one of them is dropped from further advertising, the rate of the decline of its sales will be accelerated. However, there is no basis now for a prediction of the gross sales of those plans over their twenty-year life, or for a determination of what portion of total sales will be realized in a given year.

Straight line depreciation, rough and imperfect though it is, was, in general, the only method available to taxpayers during 1951 and 1952. If the taxpayer thinks its application, with respect to certain of his plans, is inequitable, it is no more so than to many another taxpayer who had no other alternative during those years. Since 1954, some taxpayers may have alternatives by which they may avoid or reduce the inequities

---

3.  See I.T. 3818, 1946–2 Cum.Bul. 42.

4.  Commissioner of Internal Revenue v. Superior Yarn Mills, 4 Cir., 228 F.2d 736, 742.

of straight line depreciation, but there is no justification for a grant of extraordinary relief to this taxpayer for the tax years 1951 and 1952, relief which is not available to other taxpayers with respect to those years. Such relief had to come from the Congress. The Tax Court had no authority to grant it, and it properly required the use of the straight line method for depreciating these plans over the five years of their useful life.

Affirmed.