DUESENBERG, INC. OF DELAWARE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67743. Promulgated December 19, 1934.

*Earle W. Wallick, C. P. A.*, for the petitioner.
*Arthur Carnduff, Esq.*, for the respondent.

## OPINION.

MURDOCK: The Commissioner determined a deficiency of $14,377.22 in the petitioner's income tax for the fiscal year ended November 30, 1930. The petitioner assigned as error the action of the Commis-

sioner in (a) including in income $101,681.85 as a profit derived from the sale of 31 automobiles to 4 subsidiaries of the De Kalb Co.; (b) failing to allow a deduction of $1,784.05 paid in connection with registering the name " Duesenberg " as a trade mark in certain foreign countries; (c) failing to allow a deduction of $81,145.79 as a part of the cost of experimental and development work on the Model " J " car allocable to the taxable year; (d) failing to allow as a credit $56,082.14 representing a net loss sustained during the fiscal year ended October 31, 1929; (e) failing to allow as a deduction $122,943.33 representing a part of a net loss sustained during the fiscal year ended October 31, 1928. The parties filed a stipulation of facts in which the petitioner expressly waived and withdrew the assignment of error shown as (e) above.

The petitioner is a Delaware corporation, with its principal office in Indianapolis, Indiana. The petitioner delivered 31 automobiles during the taxable year to 4 corporations which were subsidiaries of the De Kalb Co. These cars had cost the petitioner $202,587.85. Their value for sale by the petitioner was $304,269.70. Each automobile, as delivered, was accompanied by an invoice. Each invoice contained a description of the goods shipped and the price of the goods to the recipient. The words " Open account, subject our draft " appear on most of the invoices after the word " Terms ", but on a few, only the words " Open account " appear at that place. These invoices reflect the bookkeeping entries of the petitioner in respect to these automobiles. None of the automobiles was included in the inventory of the petitioner at the close of the taxable year. The petitioner used an accrual method of accounting in reporting its income. The Commissioner determined that the 31 automobiles had been sold by the petitioner during the taxable year and included in the petitioner's income for the taxable year, as a profit from the sale of automobiles, $101,681.85, being the difference between the sales value and the cost of the 31 automobiles.

The following facts relating to the first issue are found in the testimony of a witness who was the only witness in the case:

The four companies to which the thirty-one automobiles were shipped acted as distributors for the petitioner's automobiles in certain territories. The petitioner frequently shipped automobiles to each of these companies without first receiving an order from the company. Such shipments were made at the direction of the petitioner's vice-president and sales manager who based his decision to make the shipments upon the stock which the distributor had on hand. The distributor would not pay the petitioner for a car received from the petitioner until that car had been sold to a customer of the distributor. When one of the distributors sold a car to a customer, a copy of the order was forwarded to the petitioner. The petitioner did not charge interest on its open accounts with these four distributors. In case cars were not sold, they would either remain in the stock of the distributor or else would be reshipped

to some other distributor at the direction of the petitioner's vice-president and sales manager. Payment in full for all of the thirty-one cars in question had not been received by the petitioner up to the date of the hearing on April 18, 1934.

The facts stated in the two preceding paragraphs are all of the facts relating to the first issue which the record contains. The Commissioner has determined that the 31 automobiles were sold by the petitioner during the taxable year and, as a result, has included in income a profit from the sale of the automobiles. The petitioner concedes the correctness of the figures, but contends that none of the automobiles was sold during the taxable year. This contention is directly contrary to the determination of the Commissioner. If the contention is not supported by sufficient proof to show that it is correct and the action of the Commissioner is incorrect, then the determination of the Commissioner as to this item must be approved.

The record does not show that the 31 automobiles were not sold by the petitioner during the period in question. They were taken out of the petitioner's inventory and were apparently included in the inventory of the four companies until disposed of to customers. The purchase price of the automobiles was charged to the four companies on open accounts on the books of the petitioner. The general practice of the petitioner in dealing with these four companies, as outlined by the witness, does not show that these particular automobiles were not sold to the four distributors. Furthermore, there is nothing in the record to indicate how many of these automobiles were disposed of by the distributors to customers during the taxable year. Thus it may be that all of them were sold to customers. The petitioner used an accrual method of accounting. It does not appear that the Commissioner erred in including the profit from the sale of these 31 automobiles in the petitioner's income for the taxable year here involved.

The facts relating to assignment of error (b), which facts came into the record by way of allegations in the amended petition which were admitted in the answer thereto, are as follows:

In its fiscal year ended November 30, 1930, the petitioner paid $1,784.05 to Messrs. Marks & Clerk, Attorneys of New York City, for their services and expenses in registering the name "Duesenberg" as a trade mark in some thirty-five foreign countries. In the preparation of its return of income for said fiscal year petitioner deducted said payment as an ordinary and necessary business expense.

The respondent disallowed the deduction and restored the said item of $1,784.05 to taxable income as representing a capital expenditure.

The benefits to be derived from the registration of the name "Duesenberg" in the 35 foreign countries were not limited necessarily to the year in which the expenditures were made. These ex-

penditures were not necessarily ordinary and necessary expenses paid or incurred in carrying on the petitioner's business during the taxable year within the meaning of section 23 (a) of the Revenue Act of 1928. Consequently, the determination of the Commissioner in respect to this item must be approved. Furthermore, it is quite probable that the benefits to be derived from the registration of the name "Duesenberg" in the 35 foreign countries might reasonably be expected to extend over a considerable number of taxable years. However, it is impossible to determine the extent of this probable period. If the registration was for a definite period, that fact has not been shown. If it was for an indefinite period, then the length of that period has not been established and, consequently, no allocation of the cost can be made so as to permit a deduction of any particular part for the year here involved.

The stipulation of facts, in so far as it relates to the error assigned as (c), is in part as follows:

The petitioner expended $97,697.60 in the fiscal year ended October 31, 1927, and $85,233.20 in the fiscal year ended October 31, 1928, and $17,069.20 in the fiscal year ended October 31, 1929, or a total of $200,000.00 in said three fiscal years, in development and experimental work upon a new model car called Model J, and charged the said amounts in the respective fiscal years on its books of account to expense and deducted the said amounts from its gross income in each of said fiscal years, and filed its Federal income tax returns accordingly. The Commissioner, in determining the income tax liability of the petitioner for said three fiscal years, allowed the said sums so expended as deductions for business expense.

Said development and experimental expenditures were based upon an expected production of 500 Model J cars, with an allocation of development and experimental cost of $400 to each Model J car produced.

The first Model J car was completed in the fiscal year ended October 31, 1929. In the fiscal year ended October 31, 1929, the petitioner produced 147 Model J cars at an allocated development and experimental cost of $58,800.00; in the period of the month of November, 1929, it produced 33 Model J cars at an allocated development and experimental cost of $13,200.00; in the fiscal year ended November 30, 1930, it produced 135 Model J cars at an allocated development and experimental cost of $54,000; thereafter, it has produced, or will produce, 185 Model J cars at an allocated development and experimental cost of $74,000.00.

There are additional statements in the stipulation which show that the petitioner reported and the Commissioner determined that, because of statutory net losses for the first two fiscal years, no tax was due for the fiscal years ended October 31, 1927, 1928, and 1929 and for the month of November 1929, and, furthermore, there would have been no tax due for any of these periods even though no expense deductions had been claimed or allowed on account of the development and experimental work on the Model J car.

The petitioner contends that the expenditures in question were not deductible as ordinary and necessary expenses of the years in which

they were paid or incurred, but should be capitalized and deducted ratably over the period of production and sale of the Model J cars. The respondent suggests in his brief that the petitioner is estopped to make this contention. But estoppel is a defense which must be pleaded and proved, and since it was neither pleaded nor proved in the present case, it deserves no further consideration. Cf. *Tidewater Oil Co.*, 29 B. T. A. 1208. However, no sufficient reason to change the method of accounting for these expenditures, adopted by the petitioner on its books and income tax reports and approved by the Commissioner, has been disclosed. The accounting and tax problems of when to treat an item as expense and when to treat it as a capital expenditure frequently depend for answer upon the circumstances of the particular case. See *Commonwealth Life Insurance Co.*, 31 B. T. A. 887, and cases there cited. No detail of the expenditures nor the particular purpose for which each was made has been given. They have been lumped together and characterized in the stipulation as amounts expended " in development and experimental work upon a new model car called Model J." Circumstances can readily be imagined under which income would be reflected clearly by deducting as ordinary and necessary expenses amounts paid out in development and experimental work leading to the production of a new model car and, on the other hand, circumstances can easily be imagined under which it would seem more fitting to capitalize such expenditures as representing the cost of some capital asset. The asset might consist of drawings, patterns, or patents for a new model car. The petitioner has not named the capital asset which it claims cost it $200,000. It mentions a new model of its automobile, but this statement seems too abstract for the purpose. The allegations of fact set forth in the amended petition to support this assignment of error contain such items as " executive salaries ", " office salaries ", " engineering salaries ", " miscellaneous administrative " and " general office expense ", which are generally deductible as ordinary and necessary expenses. These allegations were denied in the answer, but they demonstrate that additional information in regard to the petitioner's business, accounting methods, and the expenditures in question, would be necessary to justify a reversal of the determination of the Commissioner in regard to these expenditures and a direction that a portion be allowed as a deduction in the present taxable year.

The remaining assignment of error is the failure of the Commissioner to allow as a credit against the petitioner's net income for the fiscal year ended November 30, 1930, an alleged net loss sustained by the petitioner during the fiscal year ended October 31, 1929. Unless the petitioner was entitled to deduct for the fiscal year ended October 31, 1929, a greater amount than the development and exper-

imental expenditures actually made in that year, there would be no net loss for that fiscal year. We have held that there is no necessity to spread the deduction of these expenditures over the period of production, instead of allowing them as expenses in the year in which paid or incurred, and it follows that the petitioner had no net loss for the fiscal year ended October 31, 1929. The determination of the Commissioner on this point is approved.

*Decision will be entered for the respondent.*