Magnetic Analysis Corporation v. Commissioner.
Magnetic Analysis Corp. v. Commissioner
Docket No. 107065.
United States Tax Court
1943 Tax Ct. Memo LEXIS 349; 1 T.C.M. (CCH) 949; T.C.M. (RIA) 43180; April 22, 1943
*349 1. Prior to the taxable year petitioner expended certain amounts in developing patents and in building machines containing the patented device. Some of these amounts it charged to expense and the remainder was capitalized. The amounts that were capitalized, except for a certain portion, were written off and deducted as either expenses, obsolescence or depreciation in years prior to the taxable year. Petitioner sustained net losses for all years prior to the taxable year in excess of the amounts so deducted as expenses, obsolescence or depreciation. Where the evidence shows that petitioner erred in charging off and deducting a portion of these expenditures in years prior to the taxable year, held, petitioner is entitled to restore to its capital account the amounts so erroneously charged off in prior years. Held, further, petitioner is entitled to a deduction under section 23(1) of the Revenue Act of 1936, based upon the amounts so restored to its capital account. Held, further, cost of certain development models and experimental machinery charged off in prior years by way of depreciation and obsolescence deductions were properly so treated under Article 23(1) (8), Regulations 94 and *350 petitioner is not now entitled to reverse such treatment and restore the cost of these development models and experimental machinery to capital account as a part of its cost of patents and recover them by way of amortization over the life of the patents. 2. The petitioner built a portable testing machine in 1935 at a cost of $1,197.35. The machine was placed with a steel company on trial where it proved unsatisfactory and was returned to the petitioner in 1936. It was reconditioned in that year and used by the petitioner for experimental purposes until June, 1937, at which time it was scrapped. Held, petitioner is entitled to a deduction in 1937 of the cost of this machine, adjusted by a deduction for depreciation allowable in 1935 and 1936 and by a deduction for its salvage value in the year when scrapped. James L. Dohr, Esq., for the petitioner. J. Richard Riggles, Jr., Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion This is a proceeding for a redetermination of deficiencies in income and excess-profits taxes determined by the respondent against petitioner for the calendar year 1937 in the amounts of $881.36 and $733.12, respectively. The entire deficiencies *351 are in controversy. Petitioner assigns two errors, as follows: (a) The respondent has erroneously increased net income for the taxable year 1937 by disallowing a deduction for Amortization of the cost of Patents in the amount of $4,940.60. (b) The respondent has erroneously increased net income for the taxable year 1937 by disallowing a deduction for "Obsolescence" in the amount of $1,168.75. The respondent did not make any adjustments to net income other than the two adjustments which petitioner has assigned as error. Findings of Fact Petitioner is a corporation organized under the laws of the State of New York with its principal office and place of business in Long Island City, New York. It filed its income and excess-profits tax return for the calendar year 1937 with the collector of internal revenue for the second district of New York. The return was made on the accrual basis. Issue 1. Petitioner was organized in the year 1928 for the purpose (a) of acquiring certain patents and patent rights covering non-destructive methods of testing steel through the medium of induced magnetism and (b) of developing, manufacturing and marketing patented machines for magnetic testing *352 of steel. Immediately after its organization petitioner took over the process of experimentation, development and improvement of the patented method and has continued it down to the present time. Additional patents and patent rights were acquired; experiments of various kinds were made; experimental machines were built, tested and rebuilt; model machines were built and placed with steel companies on trial. As a result of these activities the method was perfected and made commercially feasible; the manner of indicating magnetic evidence of flaws in steel was improved and simplified principally by the use of meter indicators instead of oscillographs; the speed of testing was increased; the range of sizes and shapes and the depth to which steel could be tested were increased; the cost of constructing the devices for using the method was substantially reduced and the cost of applying the method in steel mills was lowered by making possible operation by an unskilled attendant. Petitioner's method was demonstrated to be commercially feasible about 1933 when machines covered by the patents were leased, after extensive tests, to the Union Drawn Steel Company which publicized the advantages *353 of steel products "100% tested". They have since been manufactured and leased for commercial purposes. The commercial development of the machines over the years is indicated by the following statement showing the number of machines on lease and the steel tonnage tested: Number of
Tons
Machines
Year
Tested
Close of Year
1930
1931
1932
2,625
2
1933
7,812
4
1934
20,977
11
1935
46,102
15
1936
63,800
18
1937
87,175
21
On its return for the year 1937 petitioner claimed $21,204.24 as a deduction for description, $8,710.13 of which is not involved in this proceeding. Of the remaining $12,494.11 which is involved petitioner in a statement attached to the return explained that portion of the deduction as follows: Life Used in
Depreciation
Date
Accumulating
Allowable
Kind of Property
Acquired
Cost
Depreciation
This Year
Patents
1928
$ 82,864.72
17 yrs.
$ 5,229.74
Burroughs Patent
1931
6,222.50
17 yrs.
366.03
Patent Development
1934/6
117,271.81
17 yrs.
6,898.34
$206,359.03
$12,494.11
Of the $12,494.11 deducted on the return, the respondent disallowed $4,940.60, and in a statement attached to the deficiency notice *354 he explained this disallowance as follows: (a) Amortization of patents
deducted in return
$12,494.11
Allowed
7,553.51
Disallowed
$ 4,940.60
A summary of the computation of the amortization allowance follows: Unrecovered
Amortization
Reserve
Cost
Reserve
Cost
1937
12/31/37
Patents purchased May 1, 1928: $90,000.00
$58,080.09
$31,919.91
$5,772.21
$63,852.30
Additions to Patent Accounts: $32,705.06
$ 7,978.13
24,726.93
1,781.30
9,759.43
Total
$7,553.51
A reconciliation of the cost of $206,359.03 claimed by petitioner in its return with the total cost of $122,705.06 allowed by the respondent is in the margin. [1]
Claimed
Allowed
Disallowed
Additional
on
by
by
Allowance by
Kind of Property
Return
Respondent
Respondent
Respondent
Original patents
$ 82,864.72
$ 90,000.00
$ 7,135.28
Patent & Patent Application ac-
counts for 1928 to 1936, Inc.
25,759.67
27,675.35
1,915.68
Same accounts for 1937
2,568.65
2,568.65
Expenditures for legal expenses
and salaries, development and
development models for 1928
to 1936, Inc.
67,417.35
$67,417.35
Same for 1937
2,277.54
2,277.54
Experimental machinery for 1928
to 1936, Inc
30,317.29
183.52
30,133.77
Totals
$206,359.03
$122,705.06
$97,551.12
$13,897.15
*355 On May 1, 1928, petitioner acquired seven patents (one being a reissue of Patent No. 1322405) at a total cost of $90,000. For the taxable year 1937, the respondent has allowed petitioner a deduction for amortization of such patents in the amount of $5,772.21. During the years 1928 to 1937, inclusive, in addition to the above mentioned seven original patents, petitioner made applications for new patents and patents were issued to petitioner as follows: Number of
Number of
Net Patent
Patents
Year
Applications
Issued
1928
None
5
1929
None
1
1930
None
None
1931
5
5
1932
5
None
1933
6
2
1934
6
3
1935
3
None
1936
3
6
1937
4
7
During the years 1928 to 1937, inclusive, in addition to the above mentioned seven original patents, petitioner charged on its books to accounts denominated as Patent Account and Patent Application Account the following amounts: Patent
Patent
Application
Year
Account
Account
Total
1928
Assigning and recording original
patents
$ 3,760.41
$ 3,760.41
1929
Legal & filing fees
3,983.09
3,983.09
1930
Legal & filing fees
898.48
898.48
1931
Legal & filing fees
1,004.00
$ 991.18
1,995.18
1931
Litigation
655.00
582.03
1,237.03
1932
Legal & filing fees
2,647.00
1,868.50
4,515.50
1932
Litigation
1,339.46
1,339.46
1933
Legal & filing fees
173.00
1,979.64
2,152.64
1933
Litigation
2,379.05
2,379.05
1934
Legal & filing fees
187.50
1,874.67
2,062.17
1935
Legal & filing fees
137.00
1,569.06
1,706.06
1936
Legal & filing fees
211.29
1,434.99
1,646.28
Total to 12/31/36
$17,375.28
$10,300.07
$27,675.35
1937
Legal & filing fees
225.24
2,343.41
2,568.65
*356 For the taxable year 1937, the respondent has allowed petitioner a deduction for amortization of such Patent Account and Patent Application Account in the total amount of $1,703.51, which amount he determined as follows: 1/17 of total cost to Dec. 31, 1936
of $27,675.35 equals
$1,627.96
1/17 of 1/2 of total cost for 1937 of
$2,568.65 equals
75.55
$1,703.51
During the years 1928 to 1937, inclusive, petitioner made expenditures which on its books of account were charged to accounts denominated as Legal Expenses and Salaries, Development Accounts and Development Models, as follows: Legal Expenses
Development
Development
Year
and Salaries
Accounts
Models
Total
1928
$ 465.50
$ 2,528.25
$ 2,993.75
1929
785.00
14,999.47
15,784.47
1930
6,049.60
$ 7,651.57
14,715.08
28,416.25
1931
5,456.84
(197.66)
5,259.18
1932
6,017.71
(489.80)
5,527.91
1933
2,826.32
1,226.09
4,052.41
1934
1,606.69
89.55
1,696.24
1935
1,548.44
1,548.44
1936
2,138.70
2,138.70
$7,300.10
$27,246.27
$32,870.98
$67,417.35
1937
2,277.54
2,227.54
For the taxable year 1937, the respondent did not allow petitioner any deduction for amortization *357 of the above expenditures totalling $67,417.35. He did allow petitioner a deduction for amortization of the expenditure of $2,277.54 for 1937 which petitioner had charged to Development Accounts. The amount of the amortization allowance was 1/17 of 1/2 of $2,277.54, or $66.99. The Legal Expenses and Salaries account of $7,300.10 is further itemized as follows: Year Costs
Incurred
Item
Amount
1928
(1) Assigning and recording original patents
$ 465.50
1929
(2) Legal fees in perfecting title to one of original (Burrows) patents
75.00
1929
(3) Filing Patent Application Kinsley device
560.00
1929
(4) General patent matters
150.00
1930
(5) Legal fees in perfecting title to one of original (Burrows) patents
4,950.00
1930
(6) Amending Kinsley device Application
10.00
1930
(7) Tax on Belgian Patent (nature of filing fee)
12.00
1930
(8) Approximately 1/3 of salaries of four engineer inventors for first six
$6,222.50
months of 1930, who were working on development and patent
work, a number of patent inventions being created by them
1,077.60
$7,300.10
Item (1) in the preceding schedule was originally capitalized. In 1929, $300 was written off and deducted as legal *358 expenses, and in 1930 the balance of $165.50 was written off and deducted as legal expenses. One-third of Item (2) was deducted as a legal expense in 1929 and the balance $50of was capitalized and written off and deducted as a legal expense in 1930. Items (3) and (4) were capitalized and written off and deducted as legal expenses in 1930. Items (5), (6) and (7) were deducted as legal expenses in 1930. Item (8) was deducted as factory expenses in 1930. The amounts of $27,246.27 and $2,277.54 charged to Development Accounts are itemized as follows: Incurred
during
Incurred
1930 to
during
Item
1936, Inc.
1937
(1) Salaries
$19,213.50
$2,204.25
(2) Material & Supplies
1,144.16
17.51
(3) Freight & Express
158.21
3.64
(4) Photos & Blueprints
12.16
.45
(5) Telephone & Tele-
graph
.77
.25
(6) Insurance
.45
(7) Carfare
261.96
42.54
(8) Light & Power
73.50
(9) Stationery & Printing
1.00
(10) Miscellaneous Devel-
opment
554.73
8.90
(11) Electric Supplies Ex-
pense
72.72
(12) Travel
49.50
(13) Postage
.14
(14) Factory Overhead
4,335.42
(15) Patterns
1,368.05
$27,246.27
$2,277.54
The amounts charged to Development Accounts during 1930 to 1936, *359 inclusive, in the total amount of $27,246.27 were currently deducted as expenses in the year in which the expenditures were made. The amounts charged to Development Models during the years 1928 to 1934, inclusive, in the total amount of $32,870.98 represents the cost of machines that were leased out from one to three times. They were never out for more than a year at a time. The cost of these machines were all capitalized in the first instance. The total capitalized cost was then written off and deducted as either depreciation or obsolescence in years and amounts as follows: Deducted as
Deducted as
Year
Depreciation
Obsolescence
Total
1931
$ 789.97
$ 1,189.39
$ 1,979.36
1932
789.96
18,034.86
18,824.82
1933
594.44
594.44
1934
1,821.28
1,821.28
1935
1,523.89
8,127.19
9,651.08
$5,519.54
$27,351.44
$32,870.98
Petitioner expended monies for the building of experimental machinery, which amounts were capitalized on the books and depreciated at the annual rate of 20 percent, as follows: Experimental
Year
Machinery
Depreciation
1928
$12,790.57
$ 145.01
1929
5,777.76
671.53
1930
1,801.91
3,870.49
1931
4,227.75
4,487.17
1932
4,483.29
5,231.12
1933
536.50
5,340.87
1934
495.20
4,848.90
1935
95.87
5,236.08
1936
108.44
302.60
$30,317.29
$30,133.77
*360 In its income tax returns for the years 1928 to 1936, inclusive, petitioner claimed the respective amounts of depreciation as deductions and the returns were accepted by the respondent as filed. For the taxable year 1937, the respondent has allowed petitioner a deduction for amortization on the remaining undepreciated cost balance of the Experimental Machinery account of $183.52 in the amount of $10.80, which allowance represents 1/17th of $183.52. The amounts charged to the Experimental Machinery account in the total amount of $30,317.29 were for machines that had been built for use in the shop for experimental purposes prior to incorporating the idea in a machine that would be leased out. By the end of 1936 most of these machines were relegated to the junk pile. The amounts thus deducted by petitioner in its returns for 1928 to 1936, inclusive, as either expenses, obsolescence or depreciation and which petitioner now seeks to restore to its capital account as Legal Expenses and Salaries, Development Accounts, Development Models and Experimental Machinery total $97,551.12. Petitioner received no tax benefit from these deductions in its tax returns because of net losses sustained *361 in those years, as follows: Net Loss
Amounts
Reported
Year
Deducted
in Returns
1928
$ 145.01
$ 13,380.09
1929
996.53
14,004.99
1930
18,497.16
46,500.72
1931
11,923.37
43,721.75
1932
30,073.65
60,694.02
1933
8,761.63
32,005.07
1934
8,276.87
33,320.91
1935
16,435.60
38,497.21
1936
2,441.30
18,727.09
$97,551.12
$300,851.85
Issue 2. In 1935, petitioner built a standard portable testing machine at a cost of $1,058.94. The machine was placed with a steel company on trial where it proved unsatisfactory for their purposes and was returned to petitioner in 1936. It was reconditioned in 1936 at a further cost of $138.31 and used by petitioner for experiment purposes until June, 1937, at which time it was scrapped. Salvage value amounted to $28.60 and petitioner deducted a loss for obsolescence of $1,168.75 in 1937. This claimed deduction is computed as follows: Element of
1936
1936
Total
Cost
Costs
Costs
Labor
$ 317.98
$ 52.03
$ 370.01
Material
139.04
21.62
160.66
Overhead
601.92
64.76
666.68
Total
$1,058.94
$138.41
$1,197.35
Less Salvage - 3 transformers
28.60
Obsolescence claimed on return
$1,168.75
*362 Petitioner had not deducted any depreciation charges against the cost of this particular machine in its income tax returns for the years 1935 and 1936. Petitioner in its income tax returns for the years 1935, 1936 and 1937, Schedule "K", took depreciation on similar equipment under the heading "Leased Equipment and on Trial", on the basis of a useful life of such equipment of an average of five years. The Commissioner did not disturb these deductions for those years. The respondent disallowed the claimed deduction, and in a statement attached to the deficiency notice explained his disallowance as follows: (b) The claimed deduction on account of obsolescence of equipment is disallowed to the extent of $1,168.75 since the cost of this equipment was fully recovered by previous allowances. Opinion BLACK, Judge: We will discuss the errors assigned in the order previously given. 1. On its return for 1937, petitioner deducted $12,494.11 for the amortization of patents. The respondent allowed $7,553.51 of this amount and disallowed $4,940.60. This disallowance the petitioner assigns as error. The disallowance results primarily from a refusal on the part of the respondent to allow any *363 deduction for the amortization of certain costs totalling $97,551.12 which petitioner had deducted either as expenses, obsolescence or depreciation during the years 1928 to 1936, inclusive. These costs are as follows: Legal Expenses and Salaries
$ 7,300.10
Development Accounts
27,246.27
Development Models
32,870.98
Experimental Machinery
30,133.77
$97,551.12
The evidentiary facts concerning these costs are fully set forth in our findings. An examination of these facts show that as these expenditures were incurred petitioner in the first instance determined whether they should currently be deducted as expense in the year in which they were incurred of whether they should be capitalized. Some of the expenditures were currently deducted as expenses and the remaining expenditures were capitalized. Those that were capitalized were later written off and deducted either as expenses, obsolescence or depreciation prior to the taxable year 1937. Ordinarily that would end the matter for all time as far as income taxation is concerned. But petitioner contends that its bookkeeper was inexperienced; that he erred in deducting any of the items as expenses; that he also erred in writing *364 off the capitalized items too soon and at much too high a rate; that all of the items should have been capitalized and charged to the Patent Account as additional cost of the patents and exhausted over a period of 17 years; that it should now be permitted to revise its books accordingly; and that for the taxable year 1937, under section 23(1) of the Revenue Act of 1936, it should be permitted to deduct as "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business" 1/17th of these total costs of $97,551.12, citing Gilliam Manufacturing Co., 1 B.T.A. 967, and numerous other authorities to the same effect. The respondent takes the position that petitioner is bound by its former treatment of these items, and relies principally upon Duesenberg, Inc. v. Commissioner, 84 Fed. (2d) 921, 18 A.F.T.R. 251, affirming 31 B.T.A. 922. In his reply brief, the respondent argues as follows: Petitioner seeks to deduct through depreciation amounts which prior to 1937 it deducted as current expense, depreciation or obsolescence. When it made these deductions, *365 it knew all the facts. It also knew all the accounting possibilities because it used them all. Its decisions at that time were made with deliberation and with full knowledge of the facts. It can not be said that, because there were net losses, the claiming of the deductions were not detrimental to the respondent. The size of a taxpayer's reported net loss is a material factor in the decision not to investigate a return and by the time petitioner's reversal of its position had come to respondent's attention, the prior years, or most of them, had become statute barred. We know of no reason other than estoppel why petitioner should not now be permitted to correct a past error and so adjust its books to show the true facts, if the evidence clearly shows that such errors were made. If estoppel does not prevent, petitioner should be allowed the deduction under section 23(1), supra, to which the facts show it to be entitled. But estoppel is a defense which must be pleaded and proved, and since it was neither pleaded nor proved in the present case, it deserves no further consideration. Duesenberg, Inc., 31 B.T.A. 922, 926. In the Duesenberg case *366 we could not find from the evidence that past errors had been made Therefore, we do not regard that case as of any help to the respondent in the instant proceeding, since we are convinced from the evidence that a part of what petitioner did in the prior years was in error and should now be corrected so as to permit petitioner to obtain its proper deduction under section 23(1), supra. The deduction of $7,553.51 allowed by the respondent was based upon capitalized costs as follows: Depre-
Item
Cost
ciation
Original patents
$ 90,000.00
$5,772.21
Patent Account and Pat-
ent Application Ac-
count for 1928 to 1936,
inc.
27,675.35
1,627.96
Same accounts for 1937
2,568.65
75.55
Development Accounts
for 1937
2,277.54
66.99
Undepreciated balance
of Experimental Ma-
chinery account
183.52
10.80
$122,705.06
$7,553.51
We think that in addition to the above costs of $122,705.06 petitioner is entitled to deduct for the taxable year in question 1/17th of the amounts charged to Legal Expenses and Salaries and Development Accounts for the years 1928 to 1936, inclusive, in the total amount of $34,546.37. In our findings we further itemized the Legal Expenses and *367 Salaries of $7,300.10 into eight items. Item (1) in the amount of $465.50 is identical with the first item in the Patent Account of $3,760.41. The remaining seven items are all substantially the same kind of items as appear in the Patent and Patent Application accounts. We hold that the amounts charged to Legal Expenses and Salaries should be treated the same as the amounts charged to the Patent and Patent Application accounts. Likewise in our findings we further itemized the Development Accounts of $27,246.27 and $2,277.54 into fifteen separate items. The largest item is salaries in the amount of $19,213.50 and is identically the same kind of an item as item (8) under Legal Expenses and Salaries. Prior to July 1, 1930, petitioner charged a portion of the salaries of its inventors to the Legal Expenses and Salaries account and thereafter to Development Accounts. The items charged to Development Accounts from 1930 to 1936, inclusive, are the same kind of items as were charged to the same account for the year 1937. The respondent has allowed amortization on the $2,277.54 charged to this account for 1937. We think he was correct in so doing, but we hold that he erred in not also allowing *368 amortization on the amounts charged to this account for the years 1930 to 1936, inclusive, in the amount of $27,246.27. We sustain the respondent's determination in refusing to allow any amortization or exhaustion on $63,004.75 of the total amount of $63,188.27, charged to Development Models and Experimental Machinery accounts. The evidence shows that the amounts charged to these accounts were for machines that were built by petitioner either for leasing out to customers or for experimental use in its shop. Petitioner originally capitalized these expenditures and prior to 1937 wrote them off, except for $183.52, to obsolescence and depreciation. This seems to be in accordance with Treasury Regulations 94, Art. 23 (1)-8, which is applicable to the taxable year in question. This Article of the Regulations is printed in the margin. [2] See also Merten's Law of Federal Income Taxation, Vol. 4, section 23.78. It seems plain that petitioner has followed the provisions of this regulation in prior years and the Commissioner has allowed the deductions claimed. The experimental machinery used in petitioner's plant seems to have been depreciated at the rate of 20 per cent annually. The development *369 models, which were leased to outside parties during the period of development, seem to have been in some instances depreciated over a period of five years, in other instances three years. We see no justification now to reverse this treatment and restore this $63,004.75 to petitioner's capital account as a part of the cost of its patents to be again recovered by amortization allowances. As to this $63,004.75 the Commissioner is sustained. *370 Petitioner, in its brief, further contends that in addition to the above amounts it should be permitted to capitalize all of its net losses as shown on its returns for the years 1928 to 1933, inclusive, in the total amount of $210,306.64. The evidence does not support this contention, and it is, therefore, denied. On the first issue we hold that petitioner is entitled to a deduction of $9,585.65 for the taxable year 1937 under section 23(1) of the Revenue Act of 1936 for the exhaustion of patents and the undepreciated balance of $183.52, Experimental Machinery, computed as follows: Amount allowed by the respondent
$7,553.51
1/17th of $34,546.37 ($7,300.10 plus
$27,246.27)
2,032.14
$9,585.65
2. The second issue is whether the respondent erred in disallowing a claimed deduction for obsolescence of a portable testing machine in the amount of $1,168.75. The reason given by the respondent for this disallowance is that "the cost of this equipment was fully recovered by previous allowances." Petitioner has shown that it was using this machine for experiment purposes in 1937 and did not junk it until June of that year. Section 114 of the Revenue Act of 1936 provides in part: *371 (a) Basis for Depreciation. - The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113(b) for the purpose of determining the gain upon the sale or other disposition of such property. The material portion of section 113 (b) is as follows: (b) Adjusted Basis. - The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided. (1) General Rule. - Proper adjustment in respect of the property shall in all cases be made - * * * * *
(B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount allowable) under this Act or prior income tax laws. * * * Petitioner has proven its "basis determined under subsection (a)" which is its total cost of $1,197.35. But this cost must be adjusted "for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount allowable) under *372 this Act or prior income tax laws." Petitioner, we think, has sufficiently proved that it had not deducted anything on its books or on its income tax returns in prior years as depreciation or obsolescence on account of this particular machine. However, petitioner in these prior years of 1935 and 1936 should have treated this machine in the same manner as it treated its other machines leased out to steel companies for trial and use, and should have taken depreciation at the same rates as it generally used to those years, and which were accepted by the Commissioner. Petitioner's income tax returns for the years 1935, 1936 and 1937 are in evidence, and these returns show that petitioner took depreciation on these machines leased out to steel companies for trial and use on the basis of a useful life of five years. The Commissioner accepted this treatment of depreciation on these machines and allowed it. Therefore, while no depreciation on the machine here in question has been allowed as a deduction from income, depreciation was clearly allowable in the years 1935 and 1936, and due adjustment therefor must be made in any loss sustained by petitioner when it junked this machine in *373 1937. It does not matter that petitioner had not actually received any such deductions in 1935 or 1936 or that it had no taxable income from which such deductions could have been taken. See Beckridge Corporation, 45 B.T.A. 131, affirmed 129 Fed. (2d) 318. In the latter case the taxpayer during each year of its existence up to and including the taxable year had operated at a loss. Though incurring depreciation on certain property, such depreciation was not deducted on its Federal income tax returns. In the taxable year which was before us the property was sold. On these facts we held that the Commissioner did not err in adjusting the cost basis of the property sold by the depreciation allowable, though no income existed in prior years from which to deduct such depreciation. Our decision was affirmed by the Third Circuit. Cf. Commissioner v. Kennedy Laundry Co., 133 Fed. (2d) 660. Therefore, in computing petitioner's loss in 1937 because of the abandonment of this standard portable testing machine in that year, adjustment should be made for depreciation which was allowable on the cost of *374 such machine in 1935 and 1936 on the basis of a useful life of five years. Also the cost basis should be reduced by the salvage value of the machine concerning which there is no dispute. Decision will be entered under Rule 50. Footnotes
1. Reconciliation of cost deducted in return with cost allowed by respondent follows:↩
2. ART. 23(1)-8. Depreciation of drawings and models. - If a taxpayer has incurred expenditures in his business for designs, drawings, patterns, models, or work of an experimental nature calculated to result in improvement of his facilities or his product, and if the period of usefulness of any such asset may be estimated from experience with reasonable accuracy, it may be the subject of depreciation allowances spread over such estimated period of usefulness. The facts must be fully shown in the return or prior thereto to the satisfaction of the Commissioner. Except for such depreciation allowances no deduction shall be made by the taxpayer against any sum so set up as an asset except on the sale or other disposition of such asset at a loss or on proof of a total loss thereof.↩