Gunning, Incorporated v. Commissioner.
Gunning, Inc. v. Commissioner
Docket No. 44842.
United States Tax Court
T.C. Memo 1955-106; 1955 Tax Ct. Memo LEXIS 225; 14 T.C.M. (CCH) 352; T.C.M. (RIA) 55106; April 29, 1955
*225 Held: On the facts, petitioner is not entitled to take deductions for depreciation of assets transferred to it in 1940 for capital stock or to include the value of those assets as property in the computation of equity invested capital under section 718(a)(2), Internal Revenue Code of 1939. Allen A. Appleton, Esq., for the petitioner. John C. Calhoun, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax, declared value excess-profits tax, and excess profits tax in the following amounts and for the following years ended December 31: Declared
Excess
Income
Value Excess-
Profits
Year
Tax
Profits Tax
Tax
1943
$2,811.93
$1,199.95
$ 770.10
1944
1,316.61
17,820.63
Of the several adjustments made by respondent in determining the deficiencies only two are contested by petitioner. The issues for decision are: 1. Whether petitioner is entitled to deductions for depreciation or amortization of assets termed "Patent" and "Engineering Rights" transferred to it in 1940 in exchange for capital stock. 2. Whether petitioner is entitled to include such assets in the computation of equity invested capital under the provisions of section 718(a)(2) of the Internal Revenue Code of 1939. *226 Findings of Fact Petitioner is an Indiana corporation with its principal place of business in Frankfort, Indiana. It filed its corporation income tax and declared value excess-profits tax returns for the taxable years involved with the collector of internal revenue for the district of Indiana. Petitioner was organized in 1940 with an authorized capital stock of 20,000 no par value shares, for the purpose of manufacturing and merchandising farm implements. Lee S. Gunning, Russell T. Gunning, E. D. Burget, E. A. Spray, and John H. Ewing were the incorporating directors. In 1936, Lee S., Russell T., and Ralph M. Gunning, brothers, were farmers. Lee was farming approximately 500 acres with the help of his son, one full-time employee and other seasonal employees. Ralph was farming 80 acres which he owned and 88 acres which he rented. He also drove a school bus during the period 1936 to 1940. The acreage farmed by Russell is not shown. In 1936, Russell conceived of an idea for a machine for the loading of hay and manure and obtained a patent thereon. In that year the three Gunning brothers built such a machine for their own use. The machine having proved successful on their own farms, they *227 determined to further develop and manufacture it for sale to the public. They rented a machine shop in Tipton, Indiana, and from 1936 to 1940 operated a partnership called Gunning Brothers, for the manufacture and sale of the hay and manure loader. At one time as many as twelve men were employed in the business. The first machine was sold in 1937 and 270 machines were sold during this period by the partnership. Books were maintained by the partnership only for the year 1938, but some records were kept of cost of materials during the period of its operation. No records were in existence or could be located at the time of the hearing of these proceedings. No income tax returns were filed by the partnership for any of the years 1936 to 1940 inclusive, the stated reason being that they, the Gunnings, determined from their records that they had made no profits from the business. The only receipts of the partnership business were from sales. Lee put an estimated $12,000 of his own money into the business and Ralph put in an estimated $3,000. The partnership also borrowed approximately $8,000. This money, together with the receipts from sales was used for materials, tools, and patterns for *228 iron castings, other steel products, labor and expenses of maintaining the shop. Expenses were also incurred in repairing machines delivered to customers and dealers, the use of which developed weaknesses in various parts of the machine, and also in ascertaining, developing and making fittings necessary to adjust the machine to various makes and models of tractors with which it was to be used. Donald Gunning, son of Lee, was employed as a serviceman to make such repairs and adjustments and made trips to various areas including some of the western states. Some of the partners also made similar trips. In determining whether or not they had made a profit in each of the years 1936-1940, the partners deducted the foregoing items of expenditures as operating expenses from their gross receipts from sales. As of July 22, 1940, there were 610 shares of stock of Gunning, Incorporated subscribed for and outstanding. On that date, at a meeting of such shareholders, Lee, Russell, and Ralph Gunning submitted written offers to sell all their rights, title and interest in their machine and patent and to accept therefor a total of 12,000 shares of the stock of petitioner. These offers were accepted *229 by petitioner. Accounts termed "Patent" and "Engineering Rights", were established on petitioner's books, valued at $4,000 and $51,680, respectively. The "Engineering Rights" account was amortized over an eight-year period and the "Patent" account over the remaining life of the patent, approximately 14 1/4 years. Deductions for such amortization or depreciation were taken for income tax purposes for the taxable years involved. Respondent disallowed the claimed deductions for depreciation and further determined that for excess profits tax purposes said amounts totalling $55,680, set up on the books of petitioner as "Patent" and "Engineering Rights", were not to be included in the equity invested capital of petitioner. Opinion Petitioner contends that it is entitled to take deductions in 1943 and 1944 for depreciation of certain assets termed "Patent" and "Engineering Rights" transferred to it by the Gunning brothers in 1940 in exchange for capital stock. Section 23(1) of the Internal Revenue Code of 1939[1] provides for the deduction of a reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in the trade or business or held for the production of income. *230 Pertinent regulations of the respondent, which have been approved by the courts ( Dodge Brothers, Inc. v. United States, 118 Fed. (2d) 95) include sections 29.23(1)-1, 2 and 3, of Regulations 111, applicable portions of which are set forth in the margin. [2] *231 *232 Although its contentions, both on brief and at the hearing, are not clear, petitioner apparently proceeds on the theory that the transfer of the "Patent" and "Engineering Rights" to it by the Gunnings in exchange for its capital stock was a nontaxable exchange under the provisions of section 112(b)(5) of the Internal Revenue Code of 1939, [3] and therefore its basis for depreciation is the same as the basis of such assets in the hands of the transferors. Section 113(a)(8), Internal Revenue Code of 1939. [4] *234 This appears to have also been the understanding of counsel for the respondent prior to the submission of evidence, as to the issues in the case since in his opening statement at the hearing he stated "* * * it is our contention that it was a 112-b5 transaction that no gain or loss was recognized and therefore for the purposes of basis of these things in the hands of the corporation there should *233 be a reversion back to see what was the cash basis in the hands of the Gunning Brothers." It is doubtful, however, that this statement of counsel was intended as a concession on the part of respondent. The burden of proof was, of course, upon the petitioner to establish the nature of the transaction in order that the cost or other basis of the assets for which depreciation was sought might properly be determined. There is no evidence of any character in the record tending to show what interest each of the Gunning brothers had in the property transferred, or, how the stock received therefor was divided between them. They kept no books and apparently, so far as the record shows, had no written partnership agreement from which the interest of the individuals might be ascertained. The patent was issued in Russell's name; Lee and Ralph put unequal amounts of their own money into the business; and, *235 there is no showing as to the amount of services contributed by each. Petitioner has accordingly failed to prove that the amount of stock received by each of the transferors was "substantially in proportion to his interest in the property prior to the exchange," so as to bring the transaction within the ambit of section 112(b)(5), supra. Under this view of the case, assuming section 112(b)(5) does not apply, and that the gain or loss from the exchange was to be recognized under the provisions of section 112(a), Internal Revenue Code of 1939, [5] the basis of the assets in the hands of the petitioner would be the cost to the petitioner of the assets received. This would be the fair market value of the stock transferred, and, as there is no testimony or evidence of any kind bearing upon the fair market value of the stock, or of the assets transferred to petitioner in exchange for the stock, petitioner must fail upon this view. Assuming, however, that the *236 exchange was a non-taxable one under section 112(b)(5), the basis of the assets, under section 113(a)(8), would be the same as it would be in the hands of the individual transferors. Even under this view of the case, there is a total failure of evidence bearing on the question. This marked absence of adequate evidence is, in fact, dispositive of petitioner's whole case. The records disclose nothing from which cost can be determined. The testimony of petitioner's president, Lee Gunning, simply shows that one of the brothers conceived an idea for a hay and manure loader and obtained a patent therefor; that the others joined with him in constructing such a machine for their own use, and, upon its proving successful, decided to manufacture and sell it to others. In doing so they incurred expenses in manufacturing, selling, adjusting, and repairing the loaders after sale. These expenses were deducted from the gross receipts. He testified the partnership kept no books except for one year and perhaps some records of materials purchased, but none of these could be located or were available at the hearing. There is no showing how expenses were kept or to what accounts ascribed. The testimony *237 affirmatively reveals that the brothers treated as current operating expenses, incurred in the operation of the partnership, the very expenditures now vaguely characterized as "Patent" and "Engineering Rights". Obviously current expenses, ordinary in the operation of a manufacturing business, are not to be indiscriminately grouped and set up as capital assets. Certainly not all such expenditures could be classified as development and experimental costs. The partnership sold at least 270 machines during the period of its operations. The general term "development and experimental work" sheds little light upon the nature of such expenditures. Cf. Duesenberg, Inc. of Delaware, 31 B.T.A. 922, affirmed 84 Fed. (2d) 921. Moreover, when questioned as to whether the partnership had filed any income tax returns, Lee testified it had not because they (the Gunning brothers) had determined they had not made any profit, and, when asked how they had arrived at this conclusion repeatedly stated they had deducted all expenses of their operations from gross receipts. It is well established that a taxpayer may not receive a deduction for depreciation on any property the full cost of which has been *238 deducted from income as an operating expense, particularly where the period of limitations has run against any adjustment. Cf. Firemen's Insurance Co., 30 B.T.A. 1004; Duesenberg, Inc. of Delaware, supra; Baltimore & Ohio R.R. Co. v. Commissioner, 78 Fed. (2d) 456; Cincinnati Milling Machine Co. v. United States (Ct. Cls.) 14 Fed. Supp. 505. Estoppel, to be sure, has not been pleaded and may not be considered. However, although formal accounts were not kept, it affirmatively appears that the parties treated the expenses as current operating expenses and deducted them from gross receipts, and there is nothing to show that this treatment would not have been proper, had formal accounts been kept. Duesenberg, Inc. of Delaware, supra. Due to the inadequacies of the record we are likewise unable to find any basis herein for application of the rule in Cohan v. Commissioner, 39 Fed. (2d) 540. The above observations relating to the lack of adequate evidence are equally applicable to the question concerning the inclusion of the alleged assets as property in the computation of equity invested capital under section 718(a)(2) of the Internal Revenue Code of 1939. [6] *239 *240 On the record as a whole, we find that petitioner has failed to demonstrate any error in respondent's determination. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(1) Depreciation. - A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business, or (2) of property held for the production of income. ↩
2. SEC. 29.23(1)-1. Depreciation. - * * * The proper allowance for such depreciation is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan (not necessarily at a uniform rate), whereby the aggregate of the amounts so set aside, plus the salvage value, will, at the end of the useful life of the depreciable property, equal the cost or other basis of the property determined in accordance with section 113. Due regard must also be given to expenditures for current upkeep. * * * SEC. 29.23(1)-2. Depreciable Property. - * * * The allowance should be confined to property of this nature. In the case of tangible property, it applies to that which is subject to wear and tear, to decay or decline from natural causes, to exhaustion, and to obsolescence due to the normal progress of the art, as where machinery or other property must be replaced by a new invention, or due to the inadequacy of the property to the growing needs of the business. It does not apply to inventories or to stock in trade, or to land apart from the improvements or physical development added to it. * * * SEC. 29.23(1)-3. Depreciation of Intangible Property. - Intangibles, the use of which in the trade or business or in the production of income is definitely limited in duration, may be the subject of a depreciation allowance. Examples are patents and copyrights, licenses, and franchises. Intangibles, the use of which in the business or trade or in the production of income is not so limited, will not usually be a proper subject of such an allowance. If, however, an intangible asset acquired through capital outlay is known from experience to be of value in the business or in the production of income for only a limited period, the length of which can be estimated from experience with reasonable certainty, such intangible asset may be the subject of a depreciation allowance, provided the facts are fully shown in the return or prior thereto to the satisfaction of the Commissioner. No deduction for depreciation, including obsolescence, is allowable in respect of good will.
3. SEC. 112. RECOGNITION OF GAIN OR LOSS. * * *
(b) Exchanges Solely in Kind. - * * *
(5) Transfer to corporation controlled by transferor. - No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. * * *↩
4. SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; except that - * * *
(8) Property acquired by issuance of stock or as paid-in surplus. - If the property was acquired after December 31, 1920, by a corporation - (A) by the issuance of its stock or securities in connection with a transaction described in section 112(b)(5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), * * *
then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.↩
5. SEC. 112. RECOGNITION OF GAIN OR LOSS. (a) General Rule. - Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.↩
6. SEC. 718. EQUITY INVESTED CAPITAL. (a) Definition. - The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b) - * * *
(2) Property Paid In. - Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. If the property was disposed of before such taxable year, such basis shall be determined under the law applicable to the year of disposition, but without regard to the value of the property as of March 1, 1913. If the property was disposed of before March 1, 1913, its basis shall be considered to be its fair market value at the time paid in, If the unadjusted basis of the property is a substituted basis, such basis shall be adjusted with respect to the period before the property was paid in, by an amount equal to the adjustments proper under section 115(1) for determining earnings and profits; [Note: Sec. 718(a)(2) was repealed by sec. 112(a) of the Revenue Act of 1945, effective for taxable years beginning after December 31, 1945.]